## Steele's Appeal.

*Construction of will.—Provision for widow's maintenance binding on devisees, and on the vendees of lands charged with it.*

Where a testator by his will provided for his wife " a comfortable room" and " sufficient maintenance during her natural life" to be furnished by his two sons, and chargeable upon the land devised to them, *Held,*

1. That she was entitled thereby, to a comfortable maintenance suitable to her station, wherever she chose to reside: and that it was the duty of the sons to furnish maintenance, or to tender performance, to her:

2. That the purchaser of the land thus devised to the sons, took it subject to the provision for the widow which was a charge thereon in his hands; and he, or his representatives after his death, were bound to make good to the widow, what had been omitted, by compensation in money:

3. That the sons and devisees were also liable for the maintenance of the widow, because of their acceptance of the land on condition of furnishing it, and were not relieved therefrom by a transfer of the land to a stranger.

APPEAL from the Orphans' Court of *Pike county.*

This was an appeal by Hannah Steele, widow of Gilbert Steele, deceased, from the decree of the court below, dismissing her petition for maintenance out of her late husband's estate.

The petition set forth that Gilbert Steele made his will on the 2d of December 1841, which was proved on the 17th of January 1842; that amongst other things it contained the following bequest to the petitioner : " I give to my loving wife Hannah two good beds and bedding, and all my household furniture and clock, and to be furnished with a comfortable room, and sufficient maintenance during her natural life, and to be furnished by my two sons, Daniel and Gilbert Steele, and chargeable upon the messuage and tenement and tract or tracts of land hereinafter devised to them;" and the following devise to the defendants,

Daniel and Gilbert Steele: "And I give and devise to my two sons, Daniel and Gilbert, one hundred and eight acres, being part of different tracts of land composing my old farm, to be equally divided between my two sons, Daniel and Gilbert Steele, excepting therefrom three acres to Hannah Cortright, wife of Cornelius Cortright. And I also give to my two sons, Daniel and Gilbert, each one equal half part of thirty acres of land, to be taken off the south end of the John M. Saylor tract; the above-named messuages and tenements charged and chargeable nevertheless with the devises to my loving wife Hannah as aforesaid." That the said Gilbert Steele and John J. Westbrook were named as executors in said will, and took out letters testamentary thereon; that Daniel and Gilbert entered into possession of the said lands under the said devise; that on the 24th of June 1846, petitioner released from the lien of said legacy twenty-two acres of said land, which was afterwards sold by Daniel and Gilbert to John W. Vangorden, but that the remainder still remains liable thereto; that Daniel and Gilbert divided the residue of the land between them; and that Daniel sold his part to Gilbert and removed to Huron county, Ohio, where he still lives; that Gilbert afterwards agreed to sell the whole or part to William F. Brodhead, and that Gilbert and the said Brodhead are now the only persons having any interest in said lands; that since the 10th day of May 1851, neither Daniel nor Gilbert, nor any one else holding or claiming said lands, have provided petitioner with that which is bequeathed to her in the will.

The petition then prayed for a citation, which was served personally on Gilbert Steele and William F. Brodhead, and by mail and publication (as directed by the court) on Daniel Steele.

On the 19th of February 1856, the answer of William F. Brodhead was filed, admitting the bequest and devise; that Daniel's interest in the lands became vested in Gilbert, and that the defendant, Brodhead, purchased from Gilbert the "old farm." It alleged that, on the 10th day of May 1851, the defendant Brodhead had reserved for the petitioner a room in the house on said farm (being a comfortable room, and the best one in the house), which has remained so reserved ever since, and that defendant Brodhead and those under whom he claims were, on the said 10th day of May 1851, and ever since have been and still are ready and willing to furnish the petitioner with sufficient maintenance, &c.

On the 16th of September 1856, the petition of Hannah Steele was presented, reciting the death of William F. Brodhead in March 1856, and that he left a widow, Jane D. Brodhead, and issue seven children, to wit: Cornelia, wife of Levi B. Calder,

and James F., who are of full age, and Daniel D., Mary Jane, William F., Elizabeth, and Margaret, who are minors and have no guardian; and praying for a citation to the heirs and legal representatives of the said William F. Brodhead, deceased.

December 21st 1857, James E. Eldred was appointed guardian *ad litem*, and the rule was served on the widow, guardian, and heirs.

The complaint on the part of the petitioner was, that she was ill treated by the family of her son; that the maintenance furnished to her was insufficient and reluctantly given, so that she was compelled to leave the place, and that when she expressed a desire to return, Gilbert Steele, who was then the sole owner, cut and knocked the chinking out of the house so that it was unfit to live in.

Her application was for an annual valuation of her legacy, and a decree against the respondents for the payment of the arrears, and an apportionment among them of any deficiency that there might be.

The points in controversy were—

1. Whether the widow was compelled to reside on the devised premises or lose her support?

2. What was the effect of the release of the twenty-two acres?

3. What was the effect of the Orphans' Court sale?

4. To what extent were the individual devisees and their successive alienees *personally* liable?

The court below (BARRETT, P. J.) held that Mrs. Steele was only entitled to the room and maintenance on the devised premises, and not elsewhere; that she had no just cause of complaint, and therefore dismissed the petition.

This appeal was then taken, and the following errors assigned:

1. The court erred in dismissing the proceedings at the costs of the complainant.

2. The court erred in not directing a reference to an auditor to ascertain the annual value of the legacy to Mrs. Steele, and in not making a decree for the sale of the land to satisfy the arrears of the legacy, and a personal decree against the devisees, Gilbert S. Steele and Daniel Steele, and against the administrators of William F. Brodhead, and against Jane D. Brodhead, for the payment of any deficiency, to be apportioned among them according to the period during which they were respectively owners of the land.

The case was argued here by *John H. Vincent* and *Charles* and *Max Goepp*, for appellant.

The opinion of the court was delivered, May 24th 1864, by THOMPSON, J.—It seems very clear that the primary object of

the testator, in this case, in that portion of his will making provision for his widow after his decease, was to secure for her a comfortable maintenance for life, and that the manner of doing so was to be entirely subordinate thereto. This primary intent is clearly disclosed, and its accomplishment charged upon all his realty, but not a word is said as to the mode and manner of its administration. We have nothing, therefore, to do, in interpreting the provision under consideration, if interpretation be indeed needed in such a case, but to give full efficiency to the clearly-disclosed primary intent, and that is, in the absence of all restriction, to allow the widow the fruits of the testator's bounty, wherever she may choose to reside. Of course her discretion in this particular must be reasonably exercised both as to place and material, and *quantum*. A comfortable maintenance, measured by the station, habits, and tastes of the testator and the widow, it is fair to presume was intended; no more nor no less; without extravagance either as to place or material. This, we think, is the only limitation.

In Wusthoff *v*. Dracourt, 3 Watts 240, and in Craven *v*. Bleakney, 9 Id. 19, there were similar provisions to that now under consideration, with stronger grounds to imply restrictions than here, and in both the court held to the primary intent, and that the widows therein provided for were entitled to reside wherever they might reasonably select. In the last case it was said the doubt was whether the widow under the will providing for a maintenance during life " off the said farm" was obliged to reside on it. Rogers, J., after pointing out the ease with which such a provision might be defeated by an ill-tempered and ill-disposed son or daughter, says, "extreme caution should be observed to avoid giving bequests such construction as may afford temptation to abuse. It seems to be conceded that the devisee cannot be compelled to maintain the beneficiary on the farm itself, and why should not the right of choice be reciprocal?" Certainly this inquiry is equally pertinent to the case in hand. These cases, and Tape *v*. Tape, 18 Ohio 520, I think fully sanction the view we take of this case. It should be remembered that such a devise being in lieu of dower, the widow is on the score of merit rather to be regarded in the light of a purchaser than a volunteer, and entitled to a liberal construction of provisions made in her favour. That is the teaching of the cases just cited.

It was an error, therefore, on part of the learned judge below to adopt an opposite rule, and from a supposed expectation in the mind of the testator that the widow would reside with one or other of his devisees, infer that a restricted maintenance was intended. There was nothing in the personalty devised that

requires the construction that it must be enjoyed, if enjoyed at all, on the realty. It was strictly personalty, and might accompany the person of the owner, and be enjoyed elsewhere as well as on the premises. There was therefore nothing on which to base this limitation of maintenance, excepting a supposed expectation that she would live with the devisees.

But even this idea cannot be entertained when we remember that the realty charged was separately devised, and to be enjoyed in severalty. Which of the devisees shall have the advantage of maintenance on his portion, and which pay his proportion? Both cannot maintain her on his portion at the same time; one must contribute of necessity to-her maintenance elsewhere, and yet the charge and the duty are imposed on both by the same words. This shows that this supposed expectation of the testator did not assume any definite form, if it had been indulged in at all.

We are left entirely free, therefore, from adopting the harsh inference that the testator intended that his widow might be subjected to be cut off from association with her kindred, in order to obtain the means of living in her old age, in case the devisees should alien the property charged as they did, and spend the remainder of her days among strangers in blood or affinity, interested only in the event of her speedy demise. That she might be comfortable under such circumstances I grant is a possibility, but it would be almost miraculous if she were. Comfortable on compulsion is not impossible, but very improbable. If fixed and confined to the soil, like a vassal, the luxuries of earth, she would hardly feel to be adequate to make her comfortable. Fortunately the affection and fidelity of the testator imports nothing like this as a provision for his widow.

From these views it follows, that as the widow was not limited or restricted to any particular place to receive the maintenance provided by the will, it was the duty of those charged with furnishing it to furnish it, or tender performance to her where she might be living, or where she might choose, and so far as this has not been done the petitioner is entitled to a decree in her favour. The charge was in the nature of a debt, which the debtor, in order to discharge himself of, must seek the creditor, and perform, or offer to perform, his obligation.

Brodhead purchased the lands devised, subject to the provision in question, and it is a charge on the lands in his hands; his representatives, therefore, must make good what has been omitted, by compensation in money. So too are the sons, devisees, answerable for the maintenance of the widow, as they accepted the devises on the terms of furnishing such maintenance, and they do not relieve themselves by a transfer. We must, therefore, reverse the decree of the court below, dismissing the petition,

[Steele's Appeal.]

and send the case back again to be proceeded in, in accordance with the views herein expressed, leaving the equities to be administered under them, without further instructions, to the court below.

Now, to wit, May 23d 1864, the decree of the Orphans' Court of Pike county on the above-entitled petition is *reversed*, and the proceedings are hereby reinstated, to be proceeded in so as to allow the petitioner the amount or value of a reasonable maintenance for such time or times as the same may have been omitted, if it has been at any time so omitted, and to make such decree or decrees in the premises as to equity and right may belong, in accordance with the reasons here expressed: and it is further ordered that the appellees pay the costs of this appeal.

WOODWARD, C. J., dissented, and filed a dissenting opinion.