SOUTH MAHONING TP. v. J. F. MARSHALL ET AL.

APPEAL BY RESPONDENTS FROM THE ORPHANS' COURT OF INDIANA COUNTY.

Argued October 20, 1890—Decided January 5, 1891.

(a) A testator, after a specific bequest to his wife and a bequest of the residue of his estate to his children, devised his farm to his son David in fee, but provided: "My wife shall have as much room of the house as she may need, or as my son David and her may determine; also barn room for her stock."

(b) A codicil to the will appointed David guardian of his son John, who was weak-minded but able-bodied, as to the money that should come to him under the will, directing that John "shall remain on said farm with my beloved wife and son David who shall care for him in all his actual wants."

(c) David took possession of the farm under the will, and subsequently conveyed it with a condition that his grantee, in addition to the consideration expressed, "should be bounden by every obligation imposed up-

on the said David, his heirs and assigns," by the said last will and testament:

1. A charge upon land can be created only by express words or manifest implication. Without this, the main intent was to secure to John the personal care of his kindred. The charge, therefore, was personal; and, whatever the liability of the grantee of the land, it arose from the covenant in his line of title and was not enforceable in the Orphans' Court.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, MCCOLLUM and MITCHELL, JJ.

No. 81 October Term 1890, Sup. Ct.; court below, number and term not shown.

On September 2, 1888, Henry Weaver and Isaac Good presented their petition to the Orphans' Court, setting forth that they were the overseers of the poor of South Mahoning township, and had charge of one John Pringle, a pauper; that the said pauper's maintenance was charged upon certain lands devised to David R. Pringle by the will of David Pringle, deceased, which lands by divers mesne conveyances had become vested in J. F. Marshall and A. G. Gallentine, Marshall owning about 100 acres thereof and Gallentine 19 acres and 91 perches; that the petitioners were paying for the maintenance and support of said John Pringle the sum of one dollar per week, and had already paid out for that purpose " a large sum of money," to wit, $23.45; praying for notice to David R. Pringle, to Daniel C. Davis, executor of the will of David Pringle, deceased, and to J. F. Marshall and A. G. Gallentine, and for a rule to show cause " why an order of said court should not be made touching the maintenance and support of said John Pringle out of said lands."

Answers having been filed to the rule granted, testimony was taken from which it was made to appear that David Pringle died leaving a will dated January 2, 1872, duly admitted to probate January 12, 1872, wherein, after bequeathing to his wife, Elizabeth Pringle, as much of the household property as she might think proper to keep, also certain stock, and directing the sale of the residue of his personal estate, the payment of his debts and funeral expenses, and the division of the balance among his children, he provided:

" Also, my wife shall have as much room of the house as she

may need, or as my son David and her may determine; also barn room for her stock. I further give and devise to my son, David R. Pringle, his heirs and assigns, all that messuage and tract of land situate in South Mahoning township, and county aforesaid, together with all my freehold estate whatsoever, to hold to him the said David R. Pringle, his heirs and assign forever. He shall give unto my beloved wife, Elizabeth, one third of all the grain and hay that is raised on said farm, during the minority of my youngest child. At the time said youngest child shall become twenty-one years old, then my son David shall have full possession of said farm, and shall pay to my executor or heirs, the rate of five dollars per acre of said farm, which amount shall be equally divided among all my children, share and share alike."

By a codicil to the will it was further provided:

"And I hereby commit the guardianship of my son John Pringle as long as he shall live unto my son David Pringle of all the sums of money hereby provided for his benefit respectfully [sic], and that my son John shall remain on said farm with my beloved wife and my son David Pringle who shall care for him in all his actual wants."

It was shown, further, that at the date of said will, John Pringle was weak in mind, but a strong man and a good farm hand; that David R. Pringle took possession of the farm under the will and remained on it until 1874, when he sold it to James K. Wells, who sold to Abraham Pringle, who sold to G. H. Hayes, when David R. Pringle, on May 29, 1880, conveyed the farm direct to Hayes by a deed containing the following provision:

"It is a further condition and consideration of this indenture that the party of the second part, his heirs and assigns, shall, in addition to the sum in hand paid on this indenture, be bounden by every obligation imposed upon the said David R. Pringle, his heirs and assigns, by the last will and testament of said David Pringle, deceased."

Subsequently, on June 5, 1880, Hayes conveyed 19 acres and 91 perches of the land, which finally became vested in A. G. Gallentine; and in February, 1888, the title to 100 acres, remaining, passed from Hayes to J. F. Marshall, who in May, 1888, purchased the interest therein of Elizabeth Pringle, the widow.

After argument, the court, WHITE, P. J., on April 10, 1890, filed an opinion in which it was held that the proceeding was authorized by § 33, act of June 13, 1836, P. L. 548, and the act of May 13, 1889, P. L. 201; that, by the codicil to the will, "there was a clear intent of the testator to make John's support a charge on" the real estate of which the testator died seised, now owned and possessed by the respondents, citing: Ripple v. Ripple, 1 R. 386; Hoover v. Hoover, 5 Pa. 355; Gilbert's App., 85 Pa. 350; Hart v. Homiller, 20 Pa. 248; Gibson's App., 25 Pa. 191; Becker v. Kehr, 49 Pa. 223; Lennig's Est., 52 Pa. 139; Mussleman's App., 65 Pa. 485; Brotzman's App., 119 Pa. 645; which could be enforced by ejectment against the devisee or his alienee: Jester v. Jefferson Tp., 11 Pa. 540; but, the charge upon the farm being established, the remedial provisions of § 59, act of February 24, 1834, P. L. 84, were ample to give the Orphans' Court jurisdiction to enforce it: Jester v. Jefferson Tp., supra; Mumma's App., 127 Pa. 480.

The court, therefore, entered a decree ordering that J. F. Marshall, grantee of David R. Pringle, should receive from the petitioners the said John Pringle and give him a home in the house on the premises where David Pringle died, and out of the products of the farm supply his necessary and reasonable wants in food and clothing thenceforth; and that the said Marshall should pay to the petitioners the sum of $50, to reimburse them for expenditures on account of said John Pringle, and the costs of the proceeding, payment of said sum and costs to be enforced by writ of levari facias. The decree made provision, also, for enforcing the same charge upon the land owned by A. G. Gallentine, in case the same became necessary; and it was not to prejudice the right of John Pringle to enforce any personal liability on the part of David R. Pringle, as devisee of said lands.

Thereupon, J. F. Marshall and A. G. Gallentine, respondents, took this appeal, specifying the several portions of the said decree, for error.

*Mr. John T. Stuchul* and *Mr. John P. Blair*, for the appellants.

Counsel cited: Steele's App., 47 Pa. 437; Cable's App., 91 Pa. 327; Haworth's App., 105 Pa. 362; Hackadorn's App., 11 Pa. 88.

Opinion of the Court.

*Mr. J. N. Banks* (with him *Mr. Samuel Cunningham*), for the appellees.

OPINION, MR. JUSTICE MITCHELL:

The codicil, after appointing David guardian of John, as to the money that would come to him under the will, directs that John "shall remain on said farm with my beloved wife and my son David who shall care for him in all his actual wants." The fundamental question in the case is whether John's support is charged upon the land.

There is no doubt of the testator's expectation that his widow and David would continue to live together on the farm. This he provided for in his will, which makes no special mention of John, but includes all the children except David in one class who are to receive equal shares of money, while David is given the farm, with room thereon for the widow. But, having completed his will, the case of this particular son seems to have recurred to him, and he added the codicil in question; and, under the expectation that the family home of the widow and David would continue to be on the farm, there is little doubt that he regarded the directions that John was to remain on the farm, and also to remain with his mother and brother, as practically the same. He did not, however, put any conditions upon the devises to David and the widow, and they have parted with their estates and possession. The fulfilment of testator's intentions in the manner that he expected has thus become impossible. John must either give up his home on the farm, to retain the personal care of his kindred, or he must give up that care for a home on the farm among strangers. Under these circumstances, we must seek the testator's main intent, and that would appear to be that John should have a home with his kindred. It nowhere appears that the testator regarded John as incapable of supporting himself. The will makes no special provision for him, but treats him exactly like the others; and the codicil provides not so much for support as for care. He is to remain on the farm, but he has no title to any part of it; there is no express reservation to him of room, as in the case of the widow, nor is he to have any portion of the crops or proceeds. What John lacked was not muscle, but mind; and, to secure that, exerted honestly and kindly for

Opinion of the Court.

John's best interests, the testator made David the guardian of the money and directed that John should have a home, on the farm to be sure, but with his mother and brother who should "care for him in all his actual wants." This last provision applies naturally, in the reading of the language used, to the widow as well as to David, yet it could hardly be contended that the room in the house which the widow was to have by the will could be charged with the support of John. So far as the widow is concerned, it manifestly refers to personal care. The hardships of a support yielded out of land, perhaps grudgingly, by strangers, as to a serf adscriptus glebæ, are graphically pictured by two of our predecessors, in Craven v. Bleakney, 9 W. 19, and Steele's App., 47 Pa. 437 ; and their remarks would be especially applicable to the case of a man of weak intellect, but alleged to be of strong body, to be worked as a beast of burden for his bare subsistence. The court would certainly not lean to a construction which would produce such a result. The conceded rule is that a charge can only be created by express words or manifest implication : Hackadorn's App., 11 Pa. 86. But, even without resorting to this rule, it is plain that this case belongs to that very difficult class in which a situation has arisen never contemplated by the testator, and which renders the execution of all his directions impossible. We are obliged, therefore, to separate them, and preserve the principal intent, even at the sacrifice of the subordinate. We are of opinion that this testator's main intent was to secure to his son the kindly personal care of his kindred, and that the charge, therefore, was personal, and not fixed upon the land by the codicil.

Appellant, therefore, cannot be charged by virtue of the will. His liability, whatever be the extent of it, arises from the covenants in his line of title, and cannot be enforced in the Orphans' Court. The decree must therefore be reversed for want of jurisdiction.

Decree reversed.