# Pringle, to use of South Mahoning Township Overseers, v. Marshall, Appellant.

*Contract for care and support, assignment of.*

An assignment of a contract for care and support will not be enforced by the court unless it appears with certainty. Regard for the rights of the party entitled to the care and support, as well as the personal nature of the duty itself, would prevent a court from leaning to such construction in doubtful cases.

*Will—Charge on land—Covenants in deed.*

Testator devised his farm to his son David, but provided: " My wife shall have as much room of the house as she may need, or as my son David and her may determine; also barn room for her stock." He also directed that when the youngest child should become of age, David was to pay for the farm at the rate of $5.00 per acre. By a codicil he appointed David guardian as to the money of his son John, who was weak minded, but able bodied, and directed that John " shall remain on said farm with my beloved wife and son David, who shall care for him in all his actual wants." David took possession of the farm, and continued to care for John until 1880, when he sold the land to a brother-in-law who covenanted in his deed that he would " be bounden by every obligation imposed upon the said David R. Pringle, his heirs and assigns, by the last will and testament of said David Pringle, deceased." In 1886, John voluntarily left the farm, and, in 1888, defendant took title from David's grantee. *Held,* that " care " was not synonymous with " support," there being nothing in the will to indicate that testator regarded John as an object of support, or incapable of making his living; the charge created by the will was purely personal upon David and not upon the land, and that the expression " every obligation " in the covenant did not impose upon the purchaser of the land any care or quasi guardianship of John's person. The other provisions of the will which run with the land are sufficient to satisfy the covenants in the deed.

Argued Oct. 19, 1892. Appeal, No. 204, Oct. T., 1892, by defendant, J. F. Marshall, from judgment of C. P. Indiana Co., June T., 1891, No. 48, on judgment for plaintiff, David R. Pringle, to use of South Mahoning Twp. Overseers. Before STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Assumpsit on covenant alleged to run with land.

At the trial, before WHITE, P. J., it appeared that David Pringle died in 1872, leaving a will by which he provided inter alia as follows:

" I give and bequeath to my beloved wife, Elizabeth Pringle, as much of the household property as thinks proper to keep or need absolute : One horse, and cow, four sheep, for her own use ; the residue of my personal estate to be appraised and sold, and after all my just debts and funeral expenses are paid, then the balance be equally divided among all my children, share and share alike. Also, my wife shall have as much room of the house as she may need, or as my son David and her may determine, also barn room for her stock. I further give and devise to my son, David R. Pringle, his heirs and assigns, all that messuage and tract of land situate in South Mahoning township, and county aforesaid, together with all my freehold estate whatsoever, to hold to him the said David R. Pringle, his heirs and assigns forever, he shall give unto my beloved wife, Elizabeth, one-third of all the grain and hay that is raised on said farm during the minority of my youngest child. At the time said youngest child shall become twenty-one years old, then my son David shall have full possession of said farm and shall pay to my executor or heirs, the rate of five dollars per acre of said farm, which amount shall be equally divided among all my children share and share alike. I will that my son David shall give unto my beloved wife the one-third of all the grain and hay above specified as long as she shall live or remain my widow also the use of said part of the house."

By a codicil testator directed as follows :

" And I hereby commit the guardianship of my son John Pringle as long as he shall live unto my son David Pringle of all the sums of money hereby provided for his benefit respectfully, and that my son John shall remain on said farm with my beloved wife and my son David Pringle, who shall care for him in all his actual wants."

Other facts appear by the opinion of the Supreme Court.

It further appeared that John came back from Cambria county in 1888, and an order of relief was obtained placing him as a pauper on the township. The overseers of the poor took him to defendant, claiming that the farm was charged

with his support.   Defendant agreed to keep him if he would work.   After a short stay John voluntarily left, and the overseers took charge of him, presenting their petition to the orphans' court for an allowance out of the land.   The Supreme Court held that the orphans' court was not the proper tribunal : 138 Pa. 570.   This action was then brought.

Defendant's point was as follows, among others :

" 2. The duty of caring for John was imposed by the will upon Elizabeth Pringle and David Pringle jointly, and is so clearly and emphatically personal in its character that it could not be assigned to another person, and therefore the plaintiff cannot recover.   *Answer :* The care of John imposed by the will of his father upon the mother and David was personal, to wit : Elizabeth was confined to care, to make a consistent construction of the will and codicil ; but as to David, we think it was more.   David owned the farm, as we have said, and he had the control of the farm ; John had a right to remain there and to his personal care for his actual wants ; and David could sell them to another person, and, when so sold and assumed, would be a competent contract, and John, if he accepted that provision and was willing to take it on his behalf, could enforce it against David's assignee." [2]

Verdict and judgment for plaintiffs.   Defendant appealed.

*Error assigned,* inter alia, was (2) instruction, quoting it.

*John T. Stuchul* and *John P. Blair,* for appellant, cited Mahoning Township v. Marshall, 138 Pa. 570 ; Steele's Ap., 47 Pa. 437 ; Rollins v. Riley, 44 N. H. 9 ; Barker v. Cobb, 36 N. H. 344 ; Haworth's Ap., 105 Pa. 362.

*J. N. Banks, Samuel Cunningham* with him, for appellees.— If the will did not make a charge on the land the covenants in the deed did.

OPINION BY MR. JUSTICE MITCHELL, January 3, 1893 :

When this case was here before in another form, 138 Pa. 570, it was said that there could be little doubt that the testator regarded the directions that John should remain on the farm, and also with his mother and brother, as practically the same, but that a situation had arisen which the testator never contemplated, and which rendered the execution of all his directions impossible.   We were obliged therefore to separate

them and give effect to the most important.   We have now to consider the same difficulty with reference not only to the directions of the will but also to the provisions of the deed from David R. Pringle to Hayes.

The will provided two things for John, a home and care. The care was personal, the home was on the farm, but neither was charged on the land.   Nor was either compulsory on John without his own consent.   The father died in 1872 and the arrangement he had contemplated continued until 1880, that is, David and his mother lived on the farm and John lived with them.   In 1880 David sold the farm to Hayes, his brother-in-law, and this was the first break in the situation.   The mother and John however continued to live with the daughter and sister and her husband until 1886 when John left, and went to Cambria county.   His reasons for going are not made clear, nor are they material.   He was under no compulsion and was free to do as he pleased.   In 1880 when David left the farm, John was obliged by the circumstances to make a choice as to the person who should give him the care that the will directed, and he chose to stay on the farm and give up the immediate care of David.   In 1886 of his own choice he gave up the rest of his father's intended provision for him, the home on the farm and his mother's care, and voluntarily abandoned both by moving away.

This was the situation when the defendant purchased the farm in February, 1888, and it is in the light of these circumstances that we must consider his relation to the covenant in the deed to Hayes.   That deed was in the line of his title and he was bound by it without reference to the contents of the deed to himself.   Whatever that deed made a charge upon the land was a charge upon it in his hands equally as in the hands of Hayes.   This brings us to the construction of the covenant or condition that Hayes, as grantee, his heirs and assigns, should " be bounden by every obligation imposed upon the said David R. Pringle, his heirs and assigns, by the last will and testament of said David Pringle, deceased."                    •

Did this clause include the duty of David to afford a home on the farm and care in all his actual wants, to John?   Notwithstanding the comprehensiveness of the language it would not seem so.   It is not claimed by any one that the phrase

" every obligation " imposed on David by his father's will, is to be taken literally. The will made him guardian of the money left to John, and imposed on him the obligation of administering and accounting for it. This duty certainly neither was intended nor could be transferred.in such way. The agreement therefore must be construed not by its literal wording but by the intention of the parties.

In regard to the care to be given to John, it is to be observed that it is not synonymous with support. There is nothing in the will to indicate that the testator regarded John as an object of support, or incapable of making his living. Though of weak mind he was of strong body, was a good worker and his wages were his own. His father did not consider it necessary to make any larger provision for him than for the rest of his children, and even the direction as to guardianship and care was a subsequent thought that required a codicil to express it. What John lacked was brain, and judgment, and these were the things meant to be supplied by the care of his mother and David. There is highly respectable authority for saying that care and even support are so purely personal that they cannot be assigned, at least without the beneficiary's consent. Eastman v. Bachelder, 36 N. H. 141; Rollins v. Riley, 44 N. H. 9. It is not necessary to go this far, and we might be reluctant to hold that one in failing health or obliged by circumstances to change his residence could not provide by contract for a substituted performance of the duty even of personal care. But it is clear that such a contract ought to appear with certainty. Regard for the rights of the party entitled to kindly and faithful care, as well as the personal nature of the duty itself, would prevent a court from leaning to such a construction in all doubtful cases.

In the present case the phrase " every obligation," as already shown, cannot be taken literally. The guardianship at least was excluded. And when we turn to the words that follow we find that it is every obligation " imposed upon David R. Pringle, his heirs and assigns," that is assumed by the grantee. The duty of care of John under the will of David Pringle was not charged on the land but was personal to David R. and did not extend to his heirs and assigns. Haworth's Appeal, 105 Pa. 362. It is not therefore within the words of the condition.

But more, it was not even a personal duty of David alone, it rested equally on his mother. There was nothing that bore even the color of an attempt to transfer her part of the duty. That remained in her, and there is no clear intent to transfer David's. The fair meaning of the whole clause is that this quasi guardianship of. John's person, no more than the express guardianship of his money was meant to be transferred by the parties upon whom the will cast it, or to be assumed by the purchaser of the land as an incident or incumbrance upon it. There were other obligations upon David under the will to which the covenant can apply, and to which it may be properly confined, such as giving a room in the house and one third of the grain and hay to the widow, and the payment for the farm at five dollars per acre when the youngest child should come of age. These burdens were charged upon the land and naturally were made a part of the consideration in selling it. They come clearly within the terms of the conveyance, and are sufficient to satisfy them.

Even were this construction less clear than it is, it would be questionable whether any other could under the circumstances be now enforced against the appellant. As already said John's rights to home and care on the farm, whatever their extent might be, were not compulsory upon him, and when appellant took the conveyance of the land, John had abandoned both by moving away with no apparent intention to return. Whether he could return and reimpose the burdens might be questionable, but in fact he never did so. There is no evidence in the case that he ever intentionally or voluntarily resumed his claims under the will. When he returned from Cambria county in the fall of 1888, he did not go back to the farm nor make any claim on the appellant. His doing either was an afterthought of other parties.

The result of the whole case is that the duty of care and a home for John was not charged on the land by the will nor by the terms of the conveyance to Hayes, and there being no other basis on which appellant can be held liable this action cannot be sustained.

Judgment reversed.