## Lucinda H. Walters *v.* Mary C. Steele, Respondent.

*Will—Construction—Charge on land.*

Where a devise is made of the homestead to a son coupled with the following provision that "Lucinda," a daughter of testator, "to have her living in the Old Homestead so long as she remains unmarried and does not charge wages for services rendered," such language does not import a legacy chargeable on the land in the hands of a purchaser at sheriff's sale of the homestead on judgment arising out of the debts of the son contracted after the death of testator.  The gift of an absolute fee to the son and a living to his daughter upon the condition named indicates that the main intent was to unite them into one family.

There is no such sufficient indication of any intent of the testator that the daughter should have any additional advantage over any other member of the family to induce the court to hold that testator intended that the burden of her maintenance was to be a charge on the land itself.

Argued April 17, 1899.  Appeal, No. 15, April T., 1899, by respondent, from decree of O. C. Westmoreland Co., Nov. T., 1895, No. 18, confirming report of auditor.  Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ.  Reversed.  Opinion by BEEBER, J.

Exceptions to auditor's report.  Before McCONNELL, J.

It appears from the record that Lucinda H. Walters, legatee under the will of John Walters, petitioned to have a certain sum sufficient for her living set aside as a charge against lands under the will of her father.

The facts sufficiently appear in the opinion of the court.

The auditor reported in favor of the charge of $150 during the natural life of the petitioner as against the real estate in question.

The court below dismissed the exceptions to the auditor's report.  Mary C. Steele, respondent, appealed.

*Errors assigned* among others were (1) in dismissing the exceptant's first exception to the auditor's report, which is as follows: "1. The auditor erred in his opinion and conclusions of law as a whole." (2) In dismissing the exceptant's second exception to the auditor's report, which is as follows: "2. The auditor erred in his opinion wherein he held as matter of law 'that not only by the blending of the real and personal estate, but by the express terms upon which the devise of the land was made, that the provision (in the will of said John Walters, deceased) for the living of Lucinda H. Walters is a charge upon the land.'" (3) In dismissing exceptant's third exception to the auditor's report, which is as follows: "(3) In not finding that the provision in favor of Lucinda H. Walters was not a charge upon the land devised by John Walters, deceased, to B. F. Walters."

*Paul H. Gaither*, with him *Cyrus E. Woods, J. R. Spiegel* and *M. N. M'Geary*, for appellant.—We hold that this was never a charge upon the real estate devised to B. F. Walters, which is now owned by Mrs. Mary C. Steele, respondent: South Mahoning Twp. v. Marshall, 138 Pa. 570.

The principles as laid down in the case of Township v. Marshall, supra, are further supported by the following cases: South Mahoning Township Overseers v. Marshall, 152 Pa. 603; Biddle's Appeal, 80 Pa. 258; Haworth's Appeal, 105 Pa. 362; 2 Pomeroy's Equity, sec. 1012.

The acceptance of a devise of land charged with the payment of a legacy creates a personal liability for its payment on the part of the devisee: Lobach's Case, 6 Watts, 167; Snyder's Appeal, 75 Pa. 191; Steele's Appeal, 47 Pa. 437.

B. F. Walters, having accepted under the will, became absolutely bound personally, for "he who accepts a benefit under a will, must conform to all its provisions, and renounce every right inconsistent with them:" Hoover v. Hoover, 5 Pa. 351.

The presumption therefore being that B. F. Walters is doing his whole duty, and the fact being shown that he is so doing, petitioner has not made out a case. She cannot recover double. After she goes voluntarily and lives with B. F. Walters, with his full consent and renders him services, and receives from him her living, that is from him who is personally and first liable, and makes no complaint about the living furnished her, as

above set forth, we maintain that she is receiving and enjoying all the benefits conferred upon her by her father's will and that also from the devisee who is bound to furnish the same, and therefore she has nothing to complain of in this case and cannot recover.

*G. B. Shaw*, with him *Atkinson & Peoples*, for appellee. —There are perhaps only two questions to be considered: (1) Whether the testator intended to charge his real estate with the living given Lucinda H., his daughter. (2) Whether her maintenance is contingent upon her remaining upon the farm.

An intent to charge has been implied by the English courts from a devise of the residue, real and personal, after payment of legacies, whence a supposed design that the devisee should have nothing till the legacies were first taken out of the land.

We went a step further in McLanahan v. McLanahan, 1 P. & W. 9, where we inferred a design to charge a particular legacy from a blending of the real and personal estates in a devise not of the residue. . . . That case has become a rule of property, and it is, therefore, not to be shaken.

To the same effect are Hassanclever v. Tucker, 2 Binn. 525; Witman v. Norton, 6 Binn, 395; Brisben's Appeal, 70 Pa. 405; Blake's Estate, 134 Pa. 240; Bennett's Estate, 148 Pa. 139; Sloan's Appeal, 168 Pa. 422.

The testator's intention to charge his real estate with the legacies mentioned in his will, appears by the terms expressed therein.

The real and personal property was given to B. F. Walters "upon the following conditions, viz." One of the conditions was that Lucinda was "to have her living in the Old Homestead," etc.

It is no longer an open question that a direction to the devisee to pay a legacy out of the lands devised, or as a condition on which the lands are devised, creates a charge, or that a legacy may be charged on land by implication; no form of words is necessary.

OPINION BY BEEBER, J., July 28, 1899:

John Walters died July 4, 1884, owning and having resided for some time on a farm with a brick house, a large barn and other improvements upon it. By his will proved August 4,

1884, he disposed of his property as follows: "I hereby give to my son B. F. Walters, and his heirs, all my estate, real, personal and mixed and to whatever I shall be entitled at my decease by note, book account, or in any other way upon the following conditions, viz: It is my will that the said B. F. Walters and his heirs pay all my just debts and funeral expenses; also pay to my son J. C. Walters the sum of Fifty Dollars ($50.) if he call in person for it, to my Grand-daughter Mary C. Zimmerman now married to A. J. Steele the sum of Six hundred Dollars ($600.00), to my daughter Lucinda H. Walters the sum of One thousand Dollars ($1,000.00), and further the Lucinda H. to have her living in the Old Homestead so long as she remains unmarried, and does not charge wages for services rendered, and lastly I appoint B. F. Walters and Wm. R. Trout as my executors in carrying out this my last will and testament." B. F. Walters accepted the old homestead under this will, took possession of it as his own, and continued to possess and occupy it from testator's death until December, 1895, when he left it and went to live at Wilkensburg in an adjoining county. During all this time that her brother occupied the farm Lucinda had her home with him. She went to Wilkensburg with him and his family, and continued to live with him as a member of his family. On the farm and at Wilkensburg she rendered whatever services her strength permitted in the performance of the household duties required by her brother and his family.

In May, 1895, the old homestead was sold at sheriff's sale upon proceedings on a judgment against B. F. Walters, subsequent in date to the death of the testator. Mrs. A. J. Steele, granddaughter of and legatee under the will of the testator, became the purchaser, and either by herself or by her tenant has been in possession ever since. In her lease with the tenant she provided for the use of a room and for the maintenance of her aunt Lucinda by the tenant upon the farm so long as she remains unmarried and does not charge for her services rendered. Lucinda refused to accept this provision made with the tenant for her. Mrs. Steele then offered to take Lucinda to her home in another state, to get her better clothes than she ever had before, to pay her doctor's bills and to provide for her. This offer was also declined.

In December, 1895, Lucinda filed a petition in the orphans' court of Westmoreland county setting forth the will and the facts above narrated, alleging that Mrs. Steele refused "the petitioner her living in said property or to provide her maintenance," and asking for a citation to be directed to Mrs. Steele to "show cause why such amount as may be determined by the court should not be decreed by your honorable court to be chargeable upon and payable out of the said real estate herein described and why such decree or decrees should not be made touching the payment of such amount out of said real estate as may be requisite and just." After Mrs. Steele had filed an answer to the citation the matter was referred to "an auditor to take testimony, if necessary, and to report the facts, with an opinion." The auditor took the testimony, reported the facts substantially as set forth above, found as matter of law that the provision in the will for the living of Lucinda was a charge upon the farm, and recommended that a decree be entered in favor of the petitioner for $150 per annum to be paid during her natural life. This appeal raises the question whether or not the provision in her father's will allowing her "to have her living in the Old Homestead so long as she remains unmarried, and does not charge wages for services rendered," is a charge upon the land.

In the consideration of this question it is well to bear in mind that the courts properly incline towards an interpretation that would avoid an unnecessary creation of a multiplicity of liens. Owing to the perplexity that would arise in the transfer of real estate because of the difficulty and uncertainty of determining whether or not a legacy is a charge upon land the rule has been established that the purpose to charge must appear by direct expression or plain implication on the face of the will. It is thought to be better that legatees should occasionally encounter loss than that estates should be encumbered with doubtful liens. The hardship of a particular case should be lost sight of out of regard to the policy of the law. Something more than a mere guess or mere possibility must exist before a court will fasten a legacy as a charge upon real estate: Hackadorn's Appeal, 11 Pa. 86; Haworth's Appeal, 105 Pa. 362. One of the rules established by the courts to aid in determining whether a testator by implication meant a legacy to

be a charge is : where a devise of a residue of blended real and personal estate is given it will be presumed that it was intended that the devisee should take nothing until the legacies were first paid out of the land. The reason of the rule is that when a testator gives a legacy it must be presumed that he means it to be paid, and when he blends the two kinds of estates he must be supposed to direct the payment out of the blended estate. Otherwise the whole will would not be carried out. This intent to fix a charge upon the land has been implied by a blending of the real and personal estates even though this blended estate has not been devised as a residue : McLanahan v. McLanahan, 1 P. & W. 96 ; Tower's Appropriation, 9 W. & S. 103. Another rule is : where a devise of land is made to one upon condition that, or provided that he pays certain sums to others, those sums are a charge upon the land, because the devisee must be presumed to have accepted the devise cum onere : Ruston v. Ruston, 2 Dall. 243 ; s. c. 2 Yeates, 54 ; Holliday v. Summerville, 3 P. & W. 533 ; Pryer v. Mark, 129 Pa. 529.

Upon the authority of these two rules the auditor and court below came to the conclusion that the provision in the will for the living of Lucinda was a charge upon the land. In this conclusion we cannot concur. All the cases cited by the auditor and many others examined since the argument show that these two rules were applied where there was no uncertainty as to what the legacy really was. In fact, the legacies in all those cases where they were held to be charges upon the land were pecuniary ones. The question which the courts deciding those cases had in mind was whether a certain, clear legacy was a charge or not. They were not considering what the language granting the legacy meant. They were deciding that the testator had, by implication, manifested an intent to charge clear, certain legacies. The reasons upon which the rules rest show that they cannot properly be used to aid in determining what the testator meant by the language of the gift. The presumption that because a testator gives a legacy and blends a residue of his real and personal estate he means it shall be paid out of the real estate, or that because he devises land upon condition that the devisee pays a certain sum he means that the devised land shall pay, which two presumptions are the foundations of the two rules, can throw no light whatever on the

primary question to be determined, which is whether or not there is any legacy upon which the rules can operate. Had there been any question as to whether the pecuniary legacies given by this will, including the one of $1,000 given to Lucinda, were charges upon the land, the application of these rules would have determined the question in favor of the charge, but we do not think they can aid us in determining the primary question we have to decide, which is, what did the testator mean by the following language: "And further the Lucinda H. to have her living in the Old Homestead so long as she remains unmarried, and does not charge wages for services rendered."

The testator lived with his family, which included B. F. Walters and Lucinda H., upon this farm for some years before his death. They all constituted one family. He showed by his will no inclination to limit the interest of his son in the farm, but gave him an absolute fee which carried with it a liability to be sold for his debts. He gave to his daughter a living in the homestead, but coupled it with the condition that she should make no charge for her services. She was crippled in the use of one arm, which may have been one of the reasons why he desired her to be practically a member of his son's family. It is clear to us that he meant to link the fortunes of his son and daughter together. Giving an absolute fee to his son, and a living to his daughter upon the condition named, we think shows that his main intent was to unite them into one family. It is true no obligation was imposed on her to work, but she was practically prevented from working for any one other than her brother if she desired to have her living in the homestead, for he, as devisee of the farm, was entitled to the benefit of her services if she worked. They were to be given, as any other member of the family would give them, without hope of reward save such as she got from being a member of her brother's family. As compensation for including her in his family the brother was to get the benefit of them. The loss of the farm by reason of the son's debts was a contingency the testator never seems to have thought of. Had he intended to fasten on the homestead a charge for his daughter's maintenance, he should at least have used language that would have raised a plain implication of such an intent. Having failed to do so, the

rules of law which control us in such cases forbid us to guess or to infer from the uncertain language used that he so intended: Hackadorn's Appeal, supra; Haworth's Appeal, supra; South Mahoning Twp. v. Marshall, 138 Pa. 570.

The cases which led the auditor to his conclusion are easily distinguishable. Ripple v. Ripple, 1 Rawle, 386, was a case where the testator, living in Virginia, sent his son into Pennsylvania to buy some land. Whilst the son was away on this errand the testator grew sick, wrote his will and died. He provided for the probable purchase by his son of the land in Pennsylvania by directing that his executor, in case the purchase had been made, should sell his mansion in Virginia, and that the lands in Pennsylvania should go to his son, but he was to keep and provide for the widow and two daughters. He also provided, however, that should the contemplated purchase fail the mansion place should not be sold, but it was to be held by the widow and children until the youngest came of age—the son rendering a third of its produce for their use. When the youngest child came of age the mansion place was to be sold and the proceeds distributed as he had indicated he desired the lands which his son had been directed to purchase should be distributed. From this evident substitution of the mansion place for the projected purchase by the son it was concluded that the lands, which were subsequently purchased as originally intended by the son, were charged with the support of the widow and children as the mansion place would have been if the purchase had not been made. An intention to charge the land in Pennsylvania was implied because a mansion place, clearly charged, was to be a substitute for the Pennsylvania land if it had not been secured. Wusthoff v. Dracourt, 3 Watts, 240, was a case where the grant of two of the rooms of a house for the use and during the life of the beneficiary was held not to be a legacy, but a devise of a freehold for life, and its enjoyment did not require that the beneficiary should personally occupy them. In Craven v. Bleakney, 9 Watts, 19, the will gave the widow a good and comfortable living of the farm (and in the case the word "of" was considered as if it were the word "from"). The case is authority for the proposition that the orphans' court is the proper forum to redress the denial of the rights of the widow under this clause of the will. Part of the

opinion may be fairly cited to show, and for this purpose only it was cited by the auditor, that the widow was not necessarily obliged to reside on the farm if she wished the benefit of the bequest, but as the bequest in that case is far different from the one in this case we do not regard it as authority upon our present question. Gibson's Appeal, 25 Pa. 191, was a case very similar to the preceding case in the language of the bequest. It was admitted by both sides that the land was charged with the burden of the daughter's support, but that was because it was directed that she should be supported " of the proceeds of my " (the testator's) " land." In Steele's Appeal, 47 Pa. 437, the will directed the widow " to be furnished with a comfortable room, and sufficient maintenance during her natural life," and expressly charged this burden upon the devised lands. The language of this bequest is so different from that now under consideration that further discussion is unnecessary. In fact, it was not cited by the auditor for any purpose except to show that to enjoy certain bequests, somewhat resembling the present one, the beneficiary was not under all circumstances obliged to remain on the devised lands—and it is authority for that proposition, but it does not help to decide the pivotal point of this case.

The nearest resemblance we can find is the case of South Mahoning Twp. v. Marshall, supra. As in that case, so in this, the beneficiary was granted no estate in the land, nothing from it or out of it, but a living in the homestead, provided she remained unmarried and gave to her brother, the devisee of the homestead and the head of the family that was expected to reside in it, whatever services she chose to render. The fact that she could not go elsewhere to work for pay without losing her interest practically identified her interests with those of the family. We can see no sufficient indication of any intent of the testator that she should have any additional advantage over any other member of that family to induce us to hold that he intended to fasten the burden of her living on the land itself.

Fortunately we are not obliged to regret our conclusion, for the brother has not failed to perform what all concede to be his personal obligation, and has continued to support his sister in his own family through all his financial disasters, and down to the time of the taking of the testimony.

Coming to the conclusion we have, it is not necessary to consider any of the other questions decided by the auditor, as they are now immaterial.

Judgment reversed and petition dismissed with costs to be paid by the appellee.