**Bright Estate**

*High, Swartz, Childs & Roberts,* for accountants.

*Roland Fleer, Philip Herr* and *E. Mac Troutman,* for residuary legatee.

*Benjamin Wolf* and *John C. Gilpin,* for guardian of estate of Harris Linn Bright.

*Smith, Cahall & Aker* and *Ballard, Spahr, Andrews & Ingersoll,* for School of Horticulture for Women.

TAXIS, P. J., October 24, 1957.—The third account of The Girard Trust Corn Exchange Bank, formerly Girard Trust Company, and Virginia Powell, trustees sur trust for Harris Linn Bright, was examined and audited by the court on May 25, 1955, and further audits held on May 24, 1956, and February 6, 1957. . . .

The account shows a balance of principal of the trust for distribution of $115,313.73, and a balance of income for distribution of $6,342.25.

The reason or purpose for the filing of the account is to obtain a determination of the validity of claims presented by the guardian of Harris Linn Bright, an incompetent, and life beneficiary of the present trust. After the filing of the account and the first audit thereof, Harris Linn Bright died on November 26, 1955, and his death ended the trust. A supplemental account

has been filed covering the period ending February 27, 1957. Edward J. Gilfillan, administrator of the estate of Harris Linn Bright, has been substituted as a party. Counsel representing the guardian also represents the administrator.

Anna Linn Bright, testatrix, died on November 15, 1937, unmarried and without issue, and survived by four brothers, one of whom was Harris Linn Bright. She left a will dated August 14, 1935, and six codicils which were probated on November 18, 1937, wherein the trust for Harris Linn Bright was created as follows under paragraph seven of her will:

"I give and bequeath unto my executors and/or trustees hereinafter named, the sum of Eighty Thousand Dollars ($80,000), *IN TRUST NEVERTHE-LESS*, to invest, reinvest and keep the same invested and to expend so much of the interest and income therefrom as may be necessary *for the support of my brother*, Harris Linn Bright, for and during the term of his natural life, after the expenditure of the sum of Two Thousand Five Hundred Dollars ($2,500) per annum provided for that purpose in the Will of my father, and upon the death of my said brother, Harris Linn Bright, the corpus or principal of the trust hereby created, or so much thereof as shall remain in the hands of my executors and/or trustees, shall fall into and become a part of my residury estate, to be disposed of as is hereinafter directed. I direct that this trust shall be preferred over all other bequests and devises in this my Will." (Italics supplied.)

One-quarter of the residuary estate is given to the Pottsville Hospital and the other three quarters to The Pennsylvania School of Horticulture for Women at Ambler.

Harris Linn Bright, the beneficiary, was declared incompetent by decree dated June 12, 1939, of the Court of Common Pleas of Montgomery County, at

which time Joseph C. Bright was appointed guardian of his estate.

The first account of the trustees was audited on October 6, 1943, and adjudicated by this court on November 23, 1943. The second account of the trustees was audited on October 17, 1950, and adjudicated by this court on January 3, 1951.

At the continued audit of the third account, the guardian of the estate of Harris Linn Bright renewed his claim for $6,004.12, alleging that such sum is due him from income as actual reasonable expenses made for the support and maintenance of Harris Linn Bright. The remaindermen have vigorously resisted allowance of this claim. The claim for purposes of discussion can be divided into two categories, the first containing those items which undisputably fall *within* the scope of support contemplated by testatrix, and the second containing the so-called "questionable" items which the remaindermen contend do not fall *within* the scope of support contemplated by testatrix.

As to the latter category, the "questionable" items include the following:

Premiums on guardian's bond .......... $ 300.76
Rental of safe deposit box .............. $ 16.20
Commissions paid to guardian .......... $ 901.71
Counsel fee and filing costs paid in connection with accounting by the guardian ...... $ 328.00
Federal income tax attributable to the separate estate of Harris Linn Bright .... $4,293.70
Visits by members of the family to Harris Linn Bright ........................... $ 563.26

As noted, testatrix directed her trustees ". . . to expend so much of the interest and income therefrom as may be necessary *for the support* of my brother, Harris Linn Bright, for and during the term of his natural life . . . ". Are the items listed above "support" as intended by testatrix?

What constitutes "support" in a particular trust estate depends upon the intention of testatrix as set forth in her will. "Where, by the terms of the trust, it is provided that the trustee shall pay to or apply for a beneficiary only so much of the income and principal or either as may be necessary for the support of the beneficiary, the extent of the interest of the beneficiary depends upon the manifestation of intention by the settlor": 2 Scott on Trusts, p. 937.

There is little in the present will, other than the single use of the term "support", which is of assistance in interpreting her will. In Winthrop Co. v. Clinton, 196 Pa. 472, 476, 477, the court was faced with a similar problem. In the Winthrop case, the net income of the trust was to be paid to testator's son "for his use and support". The court noted that this term ". . . imports that his son shall be constantly provided for during his whole life with the means to obtain for himself those things which are essential to his personal, physical, subsistence . . .". The court further stated: "The word 'support' is defined by Worcester as, 'Sustenance; maintenance; subsistence; sustentation; livelihood; living'. The same lexicographer defines the word 'maintenance' as 'supply of the necessaries of life; sustenance; subsistence; livelihood; support'. In 24 Am. & Eng. Ency. of Law, p. 706, the word 'support' is thus defined: 'Support. The word support is generally used to mean articles for the sustenance of the family, as food', . . .".

The first four of the expense items listed above, i.e., premiums on guardian's bond, rental of safe deposit box, commissions paid to guardian and counsel fee, concern expenses of maintaining the separate estate of Harris Linn Bright. The question of whether maintaining the incompetent's separate estate was properly an item of support was considered by this court in this same estate in disposing of exceptions to the schedule

of distribution filed by the executors of testatrix. See Bright's Estate, 56 Montg. 301 (1940). The exceptions complained that the costs of having an incompetent declared a weak-minded person in the court of common pleas were improperly excluded from the schedule of distribution.

Although the matter was disposed of on procedural grounds, this court by way of dictum stated, at page 302: ". . . it [the claim] could not be allowed, because it would be a proper charge against the estate of the beneficiary as a weak-minded person, and should be paid from the assets of his estate, as such, as an incident to the proceeding, and as a court expense connected therewith".

A search of the Pennsylvania cases discloses no instance where the expenses of maintaining a beneficiary's separate estate were allowed as "support", and in the absence of any clear manifestation of intention by testatrix to the contrary, the scope of support in the present case will not be extended beyond the normal connotation of food, clothing and shelter. The four items of premiums on guardian's bond, rental of safe deposit box, guardian's commissions and counsel fee are disallowed.

As to the items claimed by the guardian as reimbursement for payment of Harris Linn Bright's income taxes, it is conceded by the guardian that the incompetent received income from several sources, i.e., the present trust, his father's trust and the incompetent's separate estate. The guardian has argued that payment of income taxes is a necessary incident or cost of receiving income, and is therefore properly an item falling within the scope of support. However, no authority was submitted to support the proposition that income from testatrix's support trust should bear the income taxes attributable to income received from other independent sources. In the absence of a clear

manifestation of intention in the will of testatrix to that effect, this portion of the claim must be and is herewith denied.

The final portion of the claim is for reimbursement to members of the family of Harris Linn Bright for expenses incurred by them in visiting him. These visits may have contributed to the general well-being and happiness of the incompetent but it was not shown that reimbursement was a necessary condition precedent to making the visits. In the usual family situation, a sense of obligation or personal desire is sufficient to induce occasional visits to an institutionalized member of the family. The expectation of reimbursement for expenses incurred is neither anticipated nor necessary, and in the absence of a clear demonstration that such reimbursement was necessary in the present case, I cannot conclude that payment for the visits falls within the scope of support contemplated by testatrix. Accordingly, this portion of the claim is also denied.

Claimant has argued that in the past the trustees have paid the items in the "questionable" expenses category, and that it was only during the period of the present accounting that the trustees abruptly desisted from this practice. Claimant argues that this prior pattern of distribution is binding, that past acquiescence now precludes challenging the correctness of this pattern of administration. No authority has been cited supporting this proposition, and I conclude that the payment of this type of expense in the past by the trustee and the failure of the remaindermen to object to this payment during previous accounting periods of this trust in no way bars the remaindermen from resisting the claim by the guardian of the deceased life tenant during the present accounting period.

The second category of the guardian's claim includes items admittedly within the scope of support, the pay-

ment of which, however, has been withheld by the trustees because of the $2,500 limitation appearing in the dispositive portion of testatrix's bequest.

As noted, testatrix directed her trustees to expend so much of the income from the trust as was needed to support Harris Linn Bright, ". . . after the expenditure of the sum of Two thousand five hundred dollars ($2,500) per annum provided for that purpose in the Will of my father . . .". The income from the father's trust was, until approximately 1946, ample to provide the $2,500 per annum. In 1946, the securities in the father's trust were redeemed and the proceeds reinvested and in recent years the income has declined to $1,562.50 annually. The trustees of the father's trust have paid only the income which the trust presently yields. Much argument has been given to the question of whether under the terms of the father's trust and the subsequent adjudication and schedule of distribution the father did or did not provide an annual annuity of $2,500 which was to be paid from principal if the income in any given year was not sufficient for this purpose.

The guardian has claimed from the Anna Linn Bright trust all costs of support in excess of $1,562.50 annually, or, for the period embraced by this account the amount of $4,921.87. In other words, the guardian argues that the deficiency of the Joseph Bright annuity, totaling $4,921.87, should be received from the Anna Linn Bright trust; the remaindermen contend such deficiency should be made up out of the Joseph Bright estate.

I conclude that the deficiency is not to be made up out of the Anna Linn Bright estate. The guardian's claim is without merit and is herewith dismissed.

Item fourth (a) of Joseph C. Bright's will provides: "I charge the said residuary estate with the yearly sum of $2,500 which shall be used to support and main-

tain my son, Harris Linn." Judge Solly, in his adjudication dated January 7, 1911, of the account of the executors of Joseph C. Bright, stated that residue ". . . is first charged with an annuity of $2,500 for the support and maintenance of his son, Harris Linn". Judge Solly, in his adjudication dated April 29, 1927, in the Joseph C. Bright estate said: "To raise the annuity of $2,500 for testator's son Harris Linn Bright, there should be set aside a certain sum as a special trust investment. We think that the sum set apart should be on a 4 percent basis and therefore there is awarded back to the accountants for this special trust $62,500". The schedule of distribution filed pursuant to this adjudication gives some impetus to the guardian's argument for it awarded this $62,500:

"To G. Howard Bright and Stanley Bright, Surviving Testamentary Trustees, to invest and keep invested and *to apply the income therefrom* to the extent of $2,500 yearly in the support and maintenance of Harris Linn Bright, and upon the death of said Harris Linn Bright, to pay the corpus thereof and any accumulated and unconsumed income to [various other members of the Bright family and their trustees]." (Italics supplied.)

The guardian's argument proceeds on the untenable premise that the schedule of distribution reduced Harris Linn Bright's interest in his father's estate from an annuity to a right to the first $2,500 of each year's income. It is clear, however, that where a discrepancy, difference or doubt exists between an adjudication and a schedule of distribution, the schedule must be construed in harmony with the adjudication. A schedule of distribution, to the extent that it is inconsistent with the adjudication, is invalid. Cf. Gay Estate, 75 D. & C. 563. The guardian's claim is dismissed.

The guardian has included in his claim against the estate of Anna Linn Bright a $1,500 item represent-

ing a claim for attorneys' fees in presenting the claim disposed of above. In only rare circumstances will a counsel fee be allowed from the corpus of a trust to counsel for a life tenant in representing and enforcing his claim to benefits from the trust. In the present case the trustees were clearly justified in face of the bitter contest between life tenant and remaindermen and of the legal problems presented by the language of the bequest creating the trust, in withholding payments of support of all types due the life tenant. It is inappropriate to depart from the general rule reiterated in Sowers Estate, 383 Pa. 566, 573, which states:

"Where the fund is in the hands of the court and in no jeopardy, except from the possible mistake of the court in dealing with it, and an exceptant is merely protecting his own interest, he will not be allowed counsel fees, although through his efforts others may also be benefited."

The claim for counsel fees is hereby dismissed.

A request has been made by Elizabeth S. Bright, George Howard Bright, Jr., Rodman Morgan, R. L. M. Gardner and Princeton Bank and Trust Company, executors and trustees under the will of G. Howard Bright, deceased, and for Stanley Bright, that any awards to the residuary charitable legatees should be made subject to an alleged assignment of $10,000 made by the residuary charitable legatees and contained in an agreement dated January 31, 1939. The agreement was made between Stanley Bright, G. Howard Bright and Irwin Bright on the one hand and the charitable residuary legatees on the other, the relevant portion of which reads as follows:

"Charities [The Pennsylvania School of Horticulture for Women and The Pottsville Hospital] agree that they will turn over, or cause to be turned over, to Brights, their heirs or assigns, in equal shares, any and all sums of money distributed to the Charities

which represent or are attributable to interest or income on a certain trust in the amount of $80,000 established by the will of Anna Linn Bright for the benefit of her brother, Harris Linn Bright. Charities further agree that should the interest of income so received amount to less than $10,000, or should no such income be awarded to and distributed to charities, they will turn over to Brights, a sum sufficient to make a total of $10,000, said sum to be paid out of any distributions to said charities of the various amounts to become due and payable to them as residuary legatees, when and as said payments, or any of them, are received."

This agreement is clearly not a present assignment, but rather a contract to assign and to turn over to the Brights funds distributed to the charities from this trust "when and as" these distributions are actually received by the charities. At present, funds have neither been distributed to nor received by the charities, and this proceeding presents neither the proper time nor forum for enforcement of this agreement. A spendthrift trust clause appears in paragraph eighteenth of testatrix' will and protects both income and principal payments to testatrix's beneficiaries from anticipation. Were the terms of the above agreement couched in the language of a present assignment, it would be effectively nullified by the spendthrift provisions of testatrix's will, and doubtless the presence of the spendthrift provision explains the agreement of the instrument in question and the language employed therein. Cf. 2 Scott on Trusts, 2nd Ed., §152.6.

No present assignment having been made of the interest of the charitable residuary legatees, the request for an award subject to the terms of this agreement is hereby denied.

Under the suggested distribution contained in the last paragraph of the petition for adjudication, the accountants have included a suggested award of $33,-

333.33 to the Girard Trust Corn Exchange Bank and Virginia Powell in trust for Marguerite Bright Durshuck as per paragraph eleventh of will as amended by codicil dated July 13, 1937. The will under paragraph eleventh, reads as follows:

"I give and bequeath unto my executors and/or trustees hereinafter named an amount in cash or securities of my estate sufficient to produce the sum of One thousand Dollars ($1000) per annum net, *IN TRUST NEVERTHELESS*, to invest, reinvest, and keep the same invested and to pay over the net income therefrom unto my cousin, Marguerite Bright Durshuck, for and during the term of her natural life, and upon the death of my said cousin, Marguerite Bright Durshuck, the corpus or principal of the trust hereby created shall fall into and become a part of my residuary estate, to be disposed of as is hereinafter directed."

The codicil of July 13, 1937, reads as follows:

"Concerning Item Eleventh of my will I wish to be as it is in its entirety, except I desire that the sum of ONE THOUSAND DOLLARS ($1000) per annum net be paid to my brother JOHN IRWIN BRIGHT during his lifetime, and at his death the bequest to be continued to the first named Marguerite Bright Durshuck and all the provisions as first provided by me carried out in full."

The sum of $33,333.33 represents capitalization of the annuity of $1,000 per annum at three percent. A three percent capitalization of an annuity is both customary (Hanson's Estate, 12 D. & C. 128) and reasonable in light of present market yields and trust administration experience, and is therefore deemed correct by the court and hereby allowed.

The transfer inheritance tax has been paid.

The net ascertained balances of principal and income for distribution are awarded as suggested under the last paragraph of the petition for adjudication.

632

The account is confirmed, and it is ordered and decreed that The Girard Trust Corn Exchange Bank and Virginia Powell, testamentary trustees, as aforesaid, forthwith pay the distributions herein awarded.

Counsel for accountants shall file a schedule of distribution in duplicate.

The testamentary trustees shall present the assets of the trust herein awarded to them to Alonzo R. Horsey, Esq., who is appointed examiner under rule 91.

And now, October 24, 1957, this adjudication is confirmed nisi.