## Winthrop Company *v.* Clinton.

*Trusts and trustees—Spendthrift trust—Will.*

It is not essential that a spendthrift trust should contain words provid-
ing specifically that the income shall not be subject to the debts or liabili-
ties of the cestui que trust.

The word "support" in a trust clause in a will has a much more limited
meaning than the word "benefit," and a gift for the "support" of a son
means a gift for his personal or physical subsistence or maintenance.

Testator gave his estate to his executors to pay the net income to his
wife "into her own hands for her separate use and maintenance during
all the term of her natural life" and after her decease to pay the net in-
come to his son "for his use and support for and during all the term of
his natural life, and not to be liable to anticipation, and his receipt alone
to be the sole discharge" to the trustees. There was a gift over after the
son's death. *Held*, that a spendthrift trust was created in favor of the son.

Argued March 19, 1900. Appeal, No. 434, Jan. T., 1899, by
defendants, from judgment of C. P. No. 1, Phila. Co., Sept. T.,
1897, No. 19, in answers to foreign attachment in case of Win-
throp Company v. Winfield A. Clinton. Before GREEN, C. J.,
DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Foreign attachment.

Rule for judgment on answers.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was in entering judgment against garnishees
upon their answer.

*John G. Johnson*, with him *Samuel M. Hyneman*, for appellants.—The undoubted intention of the testator was to protect his son Winfield from his own improvidence and to secure to him an income "for his use and support during all the term of his natural life." He thus created a spendthrift trust: Keyser v. Mitchell, 67 Pa. 473; Stambaugh's Est., 135 Pa. 585; Vaux v. Parke, 7 S. & W. 25; Smith v. Savidge, 4 Pennypacker, 320.

*R. Stewart Smith* and *Charles E. Morgan, Jr.*, for appellee.—As Winfield A. Clinton, under the provisions of the will, can go into a court of equity and demand of the executors payment of the income when the same falls due, an attaching creditor is entitled to whatever income is due and payable to the debtor, there being no provision exempting the same from execution: Girard Life Ins. & Trust Co. v. Chambers, 46 Pa. 485; King's Est., 147 Pa. 410; Park v. Matthews, 36 Pa. 28.

The cardinal rule for the construction of wills is that the intent of the testator must be gathered from the will itself. Where the language of the will is clear and unambiguous, a doubt suggested by extrinsic evidence of the testator's circumstances at the time he wrote the will cannot be permitted to affect its construction: Sponsler's App., 107 Pa. 95; Baker & Wheeler's App., 115 Pa. 590; Rouser's Est., 8 Pa. Superior Ct. 188; Thompson v. Kaufman, 9 Pa. Superior Ct. 305; Overman's App., 88 Pa. 276.

OPINION BY MR. CHIEF JUSTICE GREEN, May 23, 1900:

The whole question in this case is, whether a testamentary provision in the will of a father in favor of a son is to be treated as a spendthrift trust, so as to defeat the claim of an attaching creditor of the son to the income of the fund in question. The words of the will upon which the controversy arises are a part of the fifth clause which disposes of the residue of the testator's estate. After providing that the executors shall let and demise all the real estate, and invest all the personal estate upon good securities, the will directs the executors to hold all the net proceeds of the income in trust, "to pay the whole net income thereof quarter yearly to my said beloved wife, Louisa A. Clinton, into her own hands for her separate use and maintenance during all the term of her natural life and

not to be liable to anticipation and her receipt alone to be the sole discharge to my said trustees, and from and immediately after the decease of my said wife Louisa A. Clinton then my said trustees and the survivors and survivor shall pay said net income quarter yearly unto my son Winfield A. Clinton for his use and support for and during all the term of his natural life and not to be liable to anticipation, and his receipt alone to be the sole discharge to my said trustees, and from and immediately after the decease of my said son Winfield A. Clinton then my said trustees and the survivors and survivor shall pay said net income quarter yearly unto Blanche Clinton (the present wife of said Winfield A. Clinton) if she be then living for her use and support during all the term of her natural life and not to be liable to anticipation, and her receipt alone to be the sole discharge to my said trustees and after the decease of my said wife and both the said Winfield A. Clinton and Blanche Clinton his present wife, then in trust to pay over, assign, grant and convey the whole principal of my said residuary estate unto the lawful child or children of my said son Winfield A. Clinton by his said present wife Blanche Clinton who may be then living and their lawful issue in equal shares as tenants in common."

The testator, Edwin Clinton, died in September, 1892, and his widow, Louisa A. Clinton, died in January, 1896. The son, Winfield A. Clinton is still living and the present proceeding is an attachment in execution upon a judgment obtained by the plaintiff against the said Winfield A. Clinton, November 27, 1897, for $1,576.48. Interrogatories having been served upon the executors as garnishees, they answered, saying that they had in their hands at the time of making answer $1,664.73, as income held by them as trustees under the will, but that they are advised and informed that the said income was held as a spendthrift trust in favor of the said Winfield A. Clinton and is not subject to attachment or execution for his debts or liabilities. The learned court below held that the income of the fund was the absolute property of Winfield A. Clinton, and was not protected as a spendthrift trust from the claims of his creditors, and awarded a judgment against the garnishees, from which judgment the present appeal is taken. We are unable

to agree with this decision of the court below for reasons which are of convincing force to our minds.

It must be observed that the provision in favor of the cestui que trust, Winfield A. Clinton, is one of three provisions, all of a similar character, and manifestly intended to accomplish the same purpose. They are all dispositions of the same fund, to wit: the net income of the residuary estate, and it cannot be doubted that the animating purpose of the whole was the support and maintenance during their respective lives of (1) the testator's widow; (2) Winfield A. Clinton, his son, and (3) Blanche Clinton the wife of his said son. Each of these beneficiaries was in turn to be supported during life by the use of this income. The importance of this consideration is to show that there was a common purpose moving the mind of the testator to provide a means of physical subsistence for each of these, his natural beneficiaries, during the whole of their respective lives. So far, therefore, as the ultimate determination of the question depends upon the intention of the testator to accomplish this definite object, it may be assumed that this was his sole motive and purpose. As will be hereafter seen this intent is always regarded by the courts as an important factor in the contention, and in some cases, as a controlling feature, when the usual words to create a spendthrift trust are entirely absent from the will.

But in addition to this general indication of the testator's intent let us give our attention to the precise language of the will creating the trust. Recurring to the fifth clause of the will, we find that as to the first beneficiary, the widow, the provision is " to pay the whole net income thereof quarter yearly to my said beloved wife Louisa A. Clinton, into her own hands for her separate use and maintenance during all the term of her natural life and not to be liable to anticipation and her receipt alone to be the sole discharge of my said trustees." We think it will hardly be contended that this provision in favor of the widow was not adequately protected against the claims of any creditors she might have. But without elaborating that subject, the immediately following provision, and it is part of the same sentence, is, " and from and immediately after the decease of my said wife Louisa A. Clinton, then my said trustees and the survivors and survivor shall pay said net income quar-

ter yearly unto my son Winfield A. Clinton for his use and support, for and during all the term of his natural life, and not to be liable to anticipation, and his receipt alone to be the sole discharge to my said trustees." The only difference between this provision and the one immediately previous in favor of the wife, is, that the latter contains the words "into her own hands for her separate use and maintenance," and in the second provision in favor of the son the words are "unto my son Winfield A. Clinton for his use and support." But a payment "into the hands" of his wife is precisely the same thing in every legal sense as a payment "unto my son Winfield A. Clinton." And the words "separate use and maintenance," of his wife have no different meaning than the words "use and support" of his son. The third provision for the son's wife is in the same words, "use and support." Now, not only for the purpose of fixing a testamentary intent by the use of words of similar meaning, but for the more important purpose of fixing such intent by the general meaning of the word employed in the son's case, to wit: "support," let us determine its meaning, and hence the testator's meaning, by ascertaining the received meaning of the word in general use. The word "maintenance," in the wife's case, speaks for itself, and needs no interpretation. The word "support" is defined by Worcester as, "Sustenance; maintenance; subsistence; sustentation; livelihood; living." The same lexicographer defines the word "maintenance" as "supply of the necessaries of life; sustenance; subsistence; livelihood; support." In 24 Am. & Eng. Ency. of Law, p. 706, the word "support" is thus defined: "Support. The word support is generally used to mean articles for the sustenance of the family, as food," etc. Among the authorities cited in the footnotes is this: "In a devise, a direction to 'provide a good and sufficient support' to the wife of the testator's son was construed to mean such sum as is proper for a mother and the head of a family having the fortune and station held by her husband and her children: Jacobus *v.* Jacobus, 20 N. J. Eq. 49." In Anderson's Dictionary of Law, p. 994, the word is defined thus, "support, sustenance; maintenance."

The writer has been more particular as to the meaning of this word than he would otherwise have been, because the ruling of the court below was based principally upon the decision

of this court in the case of Girard Life Ins. & Trust Co. v. Chambers, 46 Pa. 485, where the income was directed to be paid over to the cestui que trust "for his own use and benefit." Now the word "benefit" is a much broader word than "support," and has no such limited meaning as the latter word. It is thus defined in Worcester, "Advantage; gain; profit;" and its manifest signification is anything that works to the advantage or gain of the recipient. With this meaning a fund which is to be paid to a cestui que trust for his own use and benefit is absolutely his own, as was held in the case referred to, and therein lies the difference between that case and this. There were also other elements in that case which affected the decision, but which are not present here.

Having thus ascertained that the testator meant that the net income now in question was to be paid to his son "for his use and support," and that this necessarily imports that his son shall be constantly provided during his whole life with the means to obtain for himself those things which are essential to his personal, physical subsistence, the way is made quite clear to a ready solution of the question under consideration, and to an easy review of the decisions of this court on this subject. For instance if the income is to be paid to the cestui que trust for his personal, physical support and maintenance, it is manifest that if it is made subject to the claims of creditors, the whole plan and purpose of the testator is frustrated. It is too clear for argument that he could not possibly have intended that the means of subsistence which he had thus provided for his son, should be subject to seizure by his creditors, thus depriving not only himself, but his wife and family of the necessary means of living. It is not essential that a spendthrift trust should contain words providing specifically that the income shall not be subject to the debts or liabilities of the cestui que trust, and this appears by a number of the decided cases. Stambaugh's Estate, 135 Pa. 585, was a remarkable instance of the absence of any such words, or of any of the words ordinarily used to create a spendthrift trust. The present case is infinitely stronger in all its features than that. The words of the will were, "And from the other aforesaid dividend share of my estate all the just debts and claims that I have and hold against my son Moses Stambaugh are to be subtracted from the

same, and the balance thereof is to be placed in the hands of Henry Shaffer of Jackson township, whom I hereby appoint trustee for to hold the said sum for my son Moses Stambaugh. The said Henry Shaffer is to pay the interest yearly accruing from the same to my son Moses Stambaugh, after deducting taxes and necessary expenses, and after the death of my son Moses Stambaugh, I bequeath the principal to the heirs of my son Moses Stambaugh share and share alike." It will be seen that in the words used to designate the interest that Moses Stambaugh should have in the income, there is not a word which derogates in the least degree from an absolute ownership of the money to be paid him. Chief Justice PAXSON delivering the opinion said: " Is this a spendthrift trust? It may be admitted that it lacks some of the usual provisions of such a paper, notably the absence of any clause protecting the income from attachment, etc. If however we can gather from the will itself, and from the light of the circumstances surrounding the testator, at the time he made it, that his intent was to create a spendthrift trust, such intent ought not to be defeated because his conveyancer blundered. . . . When we come to examine this will we find that as to several of the legatees, children of deceased sons, the legacies are given absolutely. This is so even as to the females whose shares a testator is more likely to place in trust than those of male legatees. But when it comes to the shares of his two sons, Nathaniel and Moses, he places their shares in trust in precisely the same terms. We have no concern with Nathaniel's share, and it is referred to incidentally in ascertaining the intent of the testator. The latter had certainly some object in creating this trust for Moses. What was it? We do not think the answer difficult. The mere fact of the gift only of the income, and the interposition of a trustee implies distrust of his son. . . . He was providing for an insolvent son; and in view of the circumstances surrounding him at the time, who can doubt that he intended this as a spendthrift trust? This intent is not to be set aside because it is not clearly expressed by his scrivener." Nearly all of the foregoing language is applicable to the present case. The testator gave the other shares of his estate directly to his other children. He certainly had a purpose in giving this son's share in trust, and for his support during the whole of his life.

The only theory consistent with the provision in favor of this son, and also with the very words of the trust, is that he intended to provide a permanent means of support for his son and his family, so that they could not be deprived of it by any creditors, or by any persons claiming by way of anticipation. And this intent is much strengthened also by the provision that his son's receipt alone shall be a discharge to the trustees. He certainly did not mean that the receipt of an attaching creditor should be a discharge. For all these reasons and others that could easily be assigned we are clearly of opinion that the testator intended to create a spendthrift trust for the protection of his son.

The case of King's Estate, 147 Pa. 410, so much relied upon both by the court below and appellee's counsel, has not the least analogy to the present case. The question of spendthrift trust was not involved in the case and it was only referred to incidentally as a proposition that could not be applied to support the trust in that way. This was very obvious because the will provided that the whole income should be paid directly and unconditionally to the wife without qualification or restriction. Of course there was nothing to limit her absolute ownership, and there was also no feature of the will creating a spendthrift trust or making any provision against creditors or incurring debts.

But the case of Smith v. Savidge, 4 Pennypacker, 320, is a very strong authority in support of a spendthrift trust in the case at bar. There the provision was, "My son Levy is to have $2,000.00 out of my estate before a distribution is made, and I do appoint my son George as a committee for my son Levy to take charge of all of his money and pay him the interest, or so much of the principal that will give him a comfortable support, and after his death then his estate shall be equally divided between all his children." This court held that neither the principal nor the interest of the bequest to Levy was liable to attachment by his creditors. In distinguishing the case from Park v. Matthews, 36 Pa. 28, and Girard Life Ins. & Trust Co. v. Chambers, supra, we said, " For here as we have just shown, the expressed intention is the support of the donee and for that reason both the principal and interest are to be used." This was an interpretation of the word "support"

which is direct authority for our present ruling upon the meaning of the same word.

In Vaux v. Parke, 7 W. & S. 25, the trust was, "to pay the rents, issues and profits, interest and income arising therefrom into the proper hands of my son James, or to such person or persons, as he by any order in writing, may for that purpose appoint." There was a proviso that the trustees might in their discretion convey the estate to the son in fee simple. It was held that the will created a good spendthrift trust against the claims of creditors. SERGEANT, J., delivering the opinion, said: "Settlements of this kind by parents on their children have been of constant occurrence, and much property has thus been adjusted by will or deed. No case has ever decided that a trust of this description can be annihilated by an execution against the cestui que trust."

In conclusion it is only necessary to say that it would be utterly impossible to furnish continuing "support" for the whole life of a cestui que trust, out of an annual income fund, if that fund is to be held subject to the claims of creditors who may at any time take it from him by means of adversary proceedings. Is is therefore a necessary inference that the testator had no such intent in this case, and hence it follows that his purpose was to establish a spendthrift trust in favor of his son. The assignment of error is sustained.

The judgment is reversed and judgment is now entered in favor of the defendants, garnishees, upon their answer filed, the costs to be paid by the plaintiff.