**PRICE et al. v. ROTHENSIES, Collector of Internal Revenue.**

**Civil Action No. 4311.**

District Court, E. D. Pennsylvania.

July 10, 1946.

Kenneth W. Gemmill and Francis L. Van Dusen, both of Philadelphia, Pa., for plaintiffs.

Sewall Key, Acting Asst. Atty. Gen., Andrew D. Sharpe and Leland T. Atherton, Sp. Assts. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is an action to recover an alleged overpayment of federal estate tax upon the estate of Edward Martin, who died March 17, 1938. The case is now before the Court on motions by both parties for summary judgment on the pleadings and supporting affidavits.

The decedent's will created a trust, the income to be paid to three designated beneficiaries—cousins of his wife—during their lives, remainder to charities. The trustees were given power to invade the principal of the trust by the following provision: "I further authorize and direct my said trustees and the survivors of them, in their uncontrolled discretion, to pay from the principal of my estate to Ruth C. Dennisson, William E. Dennisson and Anna K. Dennisson, or any of them, such amount as shall be necessary for his or her comfort and support, should my said trustees deem the income payable from my estate to be inadequate for the purpose. My trustees shall be authorized to exhaust the entire principal of my Estate in the exercise of this power hereby given them."

The question involved is whether the present value of the remainder which the charities will receive is ascertainable with sufficient accuracy to permit a deduction in respect of it under Sec. 303(a) (3) of the Revenue Act of 1926, 26 U.S.C.A. Int. Rev.Acts, page 234, and Sec. 162(a) of the Revenue Act of 1936, 26 U.S.C.A. Int. Rev.Code, § 162(a).

The latest decision of the Supreme Court upon the subject, Merchants National Bank of Boston, Executor, v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 111, 88 L.Ed. 35, states the applicable rule substantially as follows: The taxpayer has the burden of establishing that the amounts which will be spent for the benefit of the private beneficiary or, to put it another way, will reach the charity are accurately calculable. While the mere fact that a possibility that the principal may be invaded and some of the corpus diverted to the life tenants does not necessarily forbid the deduction, only "where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable." It is not enough that one might "guess or gamble * * * or even insure against" the principal being invaded to an unascertained extent.

Merchants Bank v. Commissioner, supra, is not in conflict with nor does it in any way overrule the earlier decision of the Court in Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647. However, reading the two opinions together, it seems quite clear that the Ithaca Trust Co. case was an exceptionally strong case for the charitable exemption, and that the general rule imposes a much more exacting burden upon the taxpayer than the opinion of Mr. Justice Holmes in that case might have indicated.

Have the taxpayers sustained the burden in this case? Have they produced evidence on which "a highly reliable appraisal of the amount the charity will receive," can be made, or does the "standard by which the extent of permissable diversion of corpus" under this will "is to be measured embrace factors which cannot be accounted for accurately by reliable statist-

594

ical data and techniques"? Merchants Bank v. Commissioner, supra.

The answer of the taxpayers is:

(1) That the law of Pennsylvania governs.

(2) That the law of Pennsylvania sets a standard governing the discretion of trustees empowered to invade principal for the comfort and support of life beneficiaries, which is that the trustees may not (except for remotely possible temporary emergencies) spend more than such amounts as are necessary to maintain the beneficiaries in the way of life to which they have been accustomed.

(3) That the facts of this case as disclosed by the pleadings and affidavits establish that the principal of this trust estate will, in all probability, never be invaded or, if at all, only to an extent readily measurable by the standards of the beneficiaries' previous mode of living.

Conceding that we look to the law of Pennsylvania for any limit which there may be upon the trustees' discretion (although in the Merchants Bank case, supra, the Supreme Court gave scant consideration to the law of Massachusetts), it must also be conceded that the plaintiffs are bound to show this Court, with reasonable assurance, that the rule upon which they rely is, at least, fairly well settled by the Pennsylvania Courts. See Helvering v. Fitch, 309 U.S. 149, 60 S.Ct. 427, 84 L.Ed. 665.

It is true that in each of the three Pennsylvania cases cited, and relied upon by the plaintiffs, it was held that, under the will and the facts in the particular case, the principal could not be invaded beyond amounts necessary to maintain the prior mode of life of the beneficiary, but none of them go further than holding that the intention of the testator, in the light of the terms of the will and the circumstances of the case, controls the extent to which principal may be expended.

In Steele's Appeal, 47 Pa. 437, the testator had charged upon his real estate a bequest to his wife, she "to be furnished with a comfortable room, and sufficient maintenance during her natural life." Al-

though it was the room, not the maintenance, which was to be "comfortable," the Court transposed the adjective and said "A comfortable maintenance, measured by the station, habits, and tastes of the testator and the widow, it is fair to presume was intended; no more nor no less; without extravagance either as to the place or material. This, we think, is the only limitation." There was no trustee and there were no discretionary powers to be construed, and what was said about the meaning of "comfortable maintenance" was in the nature of dictum, because the will did not contain that expression. The point actually decided, on the facts of the case, was that "sufficient maintenance" in the will before the Court was intended by the testator to mean maintenance measured by station, habits, and tastes of the life beneficiary and, it is to be noted, of the testator as well.

In La Bar's Estate, 181 Pa. 1, 37 A. 111, the testator had left certain shares of stock in trust and the provision in point was, "* * * if at any time or times she needs any part of the principal of the stock she is at liberty to receive it for her support and maintenance." The beneficiary was not merely claiming payments from the corpus to supplement her income, but demanded that the trustees deliver to her the entire corpus of the trust. The Court said: "This latter provision was evidently intended to provide for possible temporary exigencies that might arise and make it necessary to supplement, for the time being, her regular annual income, which he evidently considered would be ordinarily sufficient for her needs." All that was actually decided was that the privilege to receive part of the corpus of the trust for support and maintenance did not operate as an absolute gift of the corpus. What the Court would have held, had the life beneficiary asked to acquire some reasonable additional comforts beyond those to which she had been accustomed, is pure speculation.

Hughes' Estate, 231 Pa. 475, 80 A. 1104, 1105, was another case in which no express trust was created. The life beneficiary was a half-witted drunkard, 72

years of age, incapable of handling money, who had lived with the testator. The Court, citing Steele's Appeal, supra, held that all the executors could be required to do was "to provide the petitioner with a home of like quality as was furnished him by the testator when living, including clothing suitable to his station, and medical care when necessary, and at his death a decent burial." Obviously, the testator did not mean to authorize his executors to gratify any possible desire on the part of that beneficiary to branch out into a more expensive style of living.

In none of the decisions cited did the will provide that capital was to be used for anything beyond simple support or maintenance. In only one (La Bar's Estate) were there trustees, and in none was the construction of broad discretionary powers involved. Reading all these cases and others cited by the defendant, I am satisfied that no "standard" other than the intention of the testator gathered from the will in the light of the circumstances of each case is to be found in the law of Pennsylvania.

■■■■ In every will of this kind the testator sets up his own standard to govern his trustees. If he says, as the testator in Ithaca Trust Co. v. United States, supra, said, "that may be necessary to suitably maintain her in as much comfort as she now enjoys," there can be no doubt that the discretion is strictly limited and the extent to which the principal will be depleted predictable with accuracy. If he has not expressly established a strict limitation of this kind, the burden in a tax case is upon the taxpayer to show that such was his intention. Of course, the prior scale of living of the beneficiaries is one of the things which is to be considered (along with a number of others such as the testator's own manner of life and ideas of comfort, the private resources of the beneficiaries, their social status, age, personal characteristics, etc.), but it is not the sole controlling factor, as these plaintiffs, in effect, contend and there is not the slightest intimation to be found in the opinions in the Merchants Bank case, supra,

and the Ithaca Trust Co. case, supra, that it is.

This brings us to the consideration of the will of Edward Martin and of the evidence contained in the affidavits of the circumstances surrounding the testator when he drew it, upon which the plaintiffs must rely to establish their case.

There are two or three things to be noted about the language which the testator adopted to express his intention.

(1) The discretion given to the trustees is described as "uncontrolled" and is to be exercised, not if income is inadequate, but "should my trustees deem the income inadequate." It is not suggested that these expressions, in view of the purpose of the gift, are to be taken at their full face value. Still, the will was drawn by a lawyer after consultation with the testator and I see no reason why they should simply be read out of the will when the intent of the whole provision is sought. There is no injunction of conservatism placed upon the trustees, nor, on the other hand, of liberality, as in Merchants Bank v. Commissioner, supra. What is indicated at the very least is that the exercise, in good faith, of a sound judgment in carrying out the testator's wishes is to be their guide, and certainly these phrases do not help the argument that the testator intended to bind his trustees to the observance of a rigid formula.

■■ (2) The payments are to be for "comfort and support." This may not mean a great deal more than "support" alone, but it is safe to say that the addition of the word "comfort" shows that the testator intended that the beneficiaries were to be assured something in addition to a minimum endurable standard of living.

(3) The testator expressly authorized the trustees to exhaust the entire principal of the estate in making payments to the beneficiaries. So far as this provision has any restrictive effect upon the trustees, it is in favor of the life beneficiaries and against the charities. The testator says in effect that the trustees may not refuse to make payments out of principal on the sole ground that, at the rate they

may be asked to make them, the whole fund might be exhausted before it reached the charities. He may have had in mind a number of possibilities, such as depreciation through investment losses or increased cost of living, or he might equally well have anticipated requests by the beneficiaries for additional comforts. At any rate, it is certainly not an injunction on the side of conservatism, and it indicates that, in exercising their discretion, the trustees were not to put the preservation of the bequest to the charities ahead of the comfort and support of the beneficiaries.

■ Turning now to the affidavits: Some of the evidence contained in them is clearly inadmissible. It is elementary that what the affiants say the testator told them about his intention may not be considered. Also, the statement in Mr. Price's affidavit that these particular trustees will not invade the principal to add anything to the comfort of the beneficiaries beyond their present way of living, if admissible at all as evidence, proves little or nothing. These trustees may well be succeeded by others whose ideas may be entirely different; and the same may be said of the statements of the beneficiaries themselves to the effect that they do not expect to ask the trustees to supplement their incomes from principal. No one can say with any certainty that because he is to-day satisfied with a certain way of living he will still be satisfied with it in a year or five years from now. Human experience shows that the opposite is usually the case.

It is plain from the affidavits that, at the time of the testator's death, the beneficiaries were all living on a very modest, if not meagre, scale. For the three years preceding the testator's death the average annual expenses of Mr. Dennisson and his wife were $2,333, of Miss Anna K. Dennisson $1,599, and of Miss Ruth C. Dennisson $821. The last named, however, had for several years lived about half of the year with the testator and his wife, acting as secretary for Mrs. Martin, and receiving an allowance from the Martins of $1,200 a year.

Both the sisters worked to earn a living, as did the brother's wife. Miss Ruth Dennisson, besides acting as Mrs. Martin's secretary, was a landscape gardener, with average annual earnings of about $890, and Miss Anna Dennisson was a school teacher with an average annual salary of about $1,850. Mrs. William E. Dennisson was also a school teacher, at a salary of $3,040 a year.

Outside of the earnings from their respective professions, the beneficiaries had private resources as follows: Miss Ruth C. Dennisson had a savings account and investments amounting in all to about $52,-000. Miss Anna K. Dennisson had about $6,000, and Mr. and Mrs. William E. Dennisson owned their home (cost $15,000) and had about $20,000 in savings and investments.

Miss Anna K. Dennisson will receive a retirement pension at the age of 53 and an insurance annuity of $50 a month at the age of 60. William E. Dennisson retired in 1937 and was receiving retirement and disability pay amounting to $960 a year.

At the death of the testator Miss Anna K. Dennisson was 48 years old, Miss Ruth C. Dennisson 47 (she died in 1945) and William E. Dennisson 43.

The income of each of the beneficiaries, exclusive of their professional earnings, was as follows: Anna, somewhat less than $500, Ruth, less than $600, and William and wife, William's retirement benefits of $960 plus interest on their joint savings, amounting in all to, say, $1200 or $1300 a year.

I have given the income from capital without counting that from earnings, because I do not think that the latter is a factor of much importance. It can not be assumed that the testator in providing that they should be supported in comfort expected or intended that these three ladies should be under any compulsion to continue to work for a living for any definite period in order that the corpus of the fund should go to the charities intact. Unquestionably they are entirely free to retire from active work without in the least affecting their rights under the will.

Nor does the fact that the beneficiaries managed to live within their small means and save some money each year indicate necessarily that their scale of living was entirely a matter of choice. For two of them at least, saving against the time when they could no longer work was almost as much of a necessity as meeting current expenses.

The cost of living has materially increased (perhaps by 50 per cent) since the testator's death and further inflation of prices is a serious threat.

Another consideration is that "comfort and support" was Edward Martin's expression and, while, of course, he meant the comfort and support of the beneficiaries, nevertheless his own situation may well have had something to do with what he considered comfortable support for others. Steele's Appeal, supra. We have no information as to the scale upon which he was accustomed to live but it does appear that he left a gross estate of something over $320,000.

The whole sum of the plaintiff's case upon the affidavits really comes down to this: That the testator, by ordinary standards a man of wealth, knew that his beneficiaries were middle aged people of good education and refinement, living very modestly under rather straitened circumstances, able to make ends meet, but only by working for a living (considering Mr. Dennisson and his wife as one) or through assistance from him and that, with these facts before him, he drew a will in which he insured the comfort and support of the beneficiaries at the possible expense of the charitable remainders by permitting invasion of the corpus for their benefit.

The income from the trust would have given two of the beneficiaries about $3,000 a year each, and the other $1,500. Without it, had they either voluntarily or from necessity ceased to work, none of them would have had enough income to live on. While it may be assumed that the testator did not expect them suddenly to acquire luxurious habits and live extravagantly, the plaintiffs have wholly failed to meet their burden of showing that he intended to hold them down to a style of living limited strictly by their manner of life in the past or to deny them some comforts in the way of recreation and improved living conditions which they had not previously been able to afford. What may be the reasonable and proper desires of the beneficiaries and what they may be entitled to can not now be predicted with the accuracy which the law requires.

The conclusions are:

(1) That the plaintiffs have not established that it was the intention of the testator, Edward Martin, to limit the discretion given to his trustees to invade principal only to amounts necessary to allow the beneficiaries to maintain their way of life as it was prior to his death.

(2) That the extent of permissible invasion of the corpus of the trust can not be reliably predicted and no "highly reliable" appraisal of the amount the charities will receive, is available.

Both sides have moved for summary judgment and so are in agreement that the pleadings and the evidence before the Court present no genuine issue as to any material fact. For the purposes of the motions, I have accepted as verity the statements contained in the affidavits filed by the plaintiffs, to the extent that they constitute admissible and competent evidence bearing upon the intention of the testator.

The defendant's motion for summary judgment is granted. The plaintiffs' motion for summary judgment is denied.