330 F.2d 234
 Albert STRITE and Commonwealth Trust Company of Pittsburgh, Executors of the Estate of Lillian D. Cree, Deceased, Appellants,
v.
Edgar A. McGINNES, District Director of Internal Revenue, Appellee.
 No. 14461.
 United States Court of Appeals Third Circuit.
 Argued November 21, 1963.
 Decided March 31, 1964.
 Rehearing Denied April 23, 1964.
 
 Henry D. O'Connor, Philadelphia, Pa., for appellants.
 Robert J. Golten, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Drew J. T. O'Keefe, U. S. Atty., on the brief), for appellee.
 Before McLAUGHLIN, KALODNER and GANEY, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 This is an action by the executors of the estate of Lillian D. Cree for the refund of certain estate taxes paid.
 
 
 2
 Lillian Cree was one of three sisters who, in 1939, executed identical wills. Each sister in her will established a trust of the residue of her estate, the net income from which was to be paid for life to the other two sisters and their survivor, and thereafter to a brother for life. On the death of the surviving sisters and brother, each trust estate was to be divided among the testatrix's nephews and nieces and their issue.
 
 
 3
 Under each testamentary trust, the other sisters were named as trustees, and given the power to appoint the principal if in their judgment it was "at any time necessary or advisable in order to provide for the reasonable needs and proper expenses or the benefit or comfort" of the other two sisters, i. e. themselves.[1]
 
 
 4
 As it happened, brother James died in 1941; sister Mary, in 1950; and sister Katherine, in 1953. Sister Lillian thus became the sole beneficiary of the net income and trustee of the trusts established by Mary and Katherine. When Katherine died in 1953, Lillian appointed the Commonwealth Trust Company as co-trustee of the trust established under the will of Mary.[2] Lillian died in 1956 before Katherine's estate was completely administered and the trust under Katherine's will as such apparently never came into existence.
 
 
 5
 The Internal Revenue Service and the District Court below held that Lillian had a general power of appointment over the trusts of Mary and Katherine, because the powers of Lillian to invade were not limited by an ascertainable standard relating to health, education, support or maintenance in accordance with § 2041 (b) (1) (A) of the Internal Revenue Code, and that the property subject to the power was includible in Lillian Cree's gross estate.
 
 
 6
 The posture of the case as developed by the taxpayer and the government requires an examination of sections 2041 and 2055. Both deal in part with "ascertainable standards" and powers to invade trust principal. The taxpayer regards § 2055 standards as inapplicable. The Government contends they are "analogous".
 
 
 7
 Section 2041 taxes property subject to powers of appointment possessed by a decedent at his death. Under this section, a general power of appointment is defined as a power which is exercisable in favor of the decedent, his estate, his creditors or the creditors of his estate. 26 U.S.C. 2041 (b) (1). The estate tax consequence to a decedent who possessed such a power (if created after October 21, 1942, which is the situation before us) is that property subject to the power will be included in the decedent's gross estate, whether or not the power was exercised. However, the statute provides that a power to consume, invade or appropriate property for the benefit of the decedent which is limited by "an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment", with the taxable result that the property subject to that limited power will not be included in the decedent's gross estate. 26 U.S.C. 2041 (b) (1) (A).
 
 
 8
 On the other hand § 2055 deals with deductions for charitable transfers.[3] The scope of this section is developed by the Internal Revenue Regulations. In part the present Regulation 20.2055-2 provides that "[i]f a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and, hence, severable from the non-charitable interest". (Emphasis supplied.)
 
 
 9
 Commenting on this section, in force at least since 1934 (Treasury Regulations 80 (1934 Ed.) Art. 44), the Supreme Court said:
 
 
 10
 "Although Congress, in permitting estate tax deductions for charitable bequests, used the language of outright transfer, it apparently envisaged deductions in some circumstances where contingencies, not resolved at the testator's death, create the possibility that only a calculable portion of the bequest may reach ultimately its charitable destination. * * * The limit of permissible contingencies has been blocked out in a more convenient administrative form in Treasury Regulations which provide that, where a trust is created for both charitable and private purposes the charitable bequest, to be deductible, must have, at the testator's death, a value `presently ascertainable, and hence severable from the interest in favor of the private use,' and further, to the extent that there is a power in a private donee or trustee to divert the property from the charity, `deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of such power.'" Merchants National Bank of Boston v. Commissioner, 1943, 320 U.S. 256 at pp. 259-260, 64 S.Ct. 108 at p. 110, 88 L.Ed. 35.
 
 
 11
 The Court went on to say that these regulations were an appropriate implementation of the Code Section and, "having been in effect under successive reenactments of that provision, define the framework of the inquiry in cases of this sort."
 
 
 12
 Thus it is said that the private interest must be limited by an ascertainable standard in order that the amount entitled to a charitable deduction, might be determined. "Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable." Merchants National Bank, supra, 320 U.S. at p. 261, 64 S.Ct. at p. 111, 88 L.Ed. 35.
 
 
 13
 Therefore, while § 2055 deals with the apportionment between private and charitable calculable interests in a grant, § 2041 is an all-or-nothing proposition, i. e., whether the property, subject to the power, is to be included in the decedent's gross estate or not.
 
 
 14
 Unlike § 2055 and its predecessors, § 2041 (b) (1) (A) is a relatively recent addition to the Code.[4] It came by way of the Power of Appointment Act of 1951 which amended the 1939 Code. Act of June 28, 1951, c. 165, 65 Stat. 91. The regulations promulgated by the Service implementing this section appear to spring from a position taken by the Service that § 2055 "ascertainable standards" were the same as those under § 2041.[5] There are no reported Congressional hearings on the Act, which we have been able to uncover, and it may very well be true, that the Service, aiding in the drafting of the Act, intended that the ascertainable standard of § 2055 be drawn into § 2041. The fact that the term "ascertainable standard" was used by the late Judge Mahoney in Newton Trust Co. v. Commissioner, 160 F.2d 175 (1 Cir. 1947), to describe the admeasurement required in the § 2055 problem before him is weight for the proposition that the content and the meaning of that term was adopted by the legislators, when they adopted that term in enacting § 2041.[6]
 
 
 15
 However, in the Senate and House Reports on the Power of Appointment Act, it was said:
 
 
 16
 "Section 811(f) (3) (now § 2041 (b) (1) (A)) of the bill contains the definition of a general power of appointment. This definition applies to both preexisting and future powers. * * *
 
 
 17
 "The definition provides that, if certain limitations or restrictions are present, a power is not a general power even though exercisable by the decedent in his own favor. A power to consume principal which is limited by an ascertainable standard relating to the holder's health, education, support, or maintenance is not considered a general power. * * *" House Report No. 327, Part 1, P. 5, April 17, 1951, 82 Cong. 1 Sess.; Senate Report, No. 382, P. 5, June 4, 1951, 82 Cong. 1 Sess.; U.S.Code Congressional and Administrative Service 1951, p. 1533.
 
 
 18
 With this meager background of legislative purpose, it is a fair construction of this section that the measure of control over the property by virtue of the grant of power is the determinant of the taxability of property subject to the power. See Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L. Ed. 585 (1940). Unquestionably if the exercise of the power is restricted by definite bounds, relating to health, support, maintenance and education, even though the amount of property or funds that would be absorbed in its exercise was not measurable or predictable, it would not be a general power of appointment with the resulting tax consequence. The thin line drawn here is that while under § 2041 it is required that the exercise of the power be restricted, under § 2055, it is required that the property which can be appropriated under the power be measurable.
 
 
 19
 As we indicated above, we believe that the thrust of § 2055 and the regulations promulgated under that section (which now have the force of law. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52 (1938), Taft v. Commissioner, 304 U.S. 351, 58 S.Ct. 891, 82 L.Ed. 1393 (1938)) is measurement and apportionment of funds or property destined for both charitable and private donees. Measurement is not a real issue in § 2041. The extent of property subject to the power is almost always clear, but in deciding the taxability of the property, the query in § 2041 will be the extent of the power. If the power is deemed a general one, all the property subject to the power is taxable. If the power is limited under § 2041, the property subject to the power will not be includible in decedent's gross estate.[7]
 
 
 20
 Therefore, resolving this § 2041 question, we are reluctant to look to the § 2055 ascertainable standards recognized by the courts, as determinative. Nor will we rely on the § 2041 Treasury Regulations. (See note 5.) We look rather to the grant of power given to the decedent and determine whether it is clearly limited in its exercise to matters relating to health, education, support and maintenance. The initial step is to determine in light of local law, the interest conveyed to the decedent under this trust, i. e., the extent to which, consonant with the testamentary trust provision, the decedent could invade and consume the principal. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940); Commissioner of Internal Revenue v. Ellis' Estate, 252 F.2d 109, 113 (3 Cir. 1958); Hoffman v. McGinnes, 277 F.2d 598, 602 (3 Cir. 1960).
 
 
 21
 The trust language provides for invasion when in the judgment of the trustees "it is at any time necessary or advisable in order to provide for the reasonable needs and proper expenses or the benefit or comfort" of my sister.[8] Prefatory to this provision, the testator indicated that: "It is my desire that my sisters enjoy the benefit of my property to as full an extent as they may require."
 
 
 22
 In Pennsylvania, the cardinal rule of construction is that the actual intent of the testator must prevail when it can be ascertained from the language of the will. Anderson's Estate, 243 Pa. 34, 89 A. 306 (1914); In re Keefer's Estate, 353 Pa. 281, 45 A.2d 31, 165 A.L.R. 1277 (1946). See Hoffman v. McGinnes, 277 F.2d 598 (3 Cir. 1960). This intention is to be discovered from a consideration of all the language in the four corners of the instrument, giving the words he employs their plain and ordinary meaning, except where the context in which they are used renders them a different denotation, or where legal or technical words are used and it is clear from their use that the legal or technical meaning was intended. Hoffman v. McGinnes, 277 F.2d 598 (3 Cir. 1960); Long's Estate, 270 Pa. 480, 113 A. 675 (1921); Metzgar's Estate, 395 Pa. 322, 148 A.2d 895 (1959); Collins Estate, 393 Pa. 195, 142 A.2d 178 (1958); Wright Estate, 380 Pa. 106, 110 A.2d 198 (1955); Schellentrager v. Tradesmens National Bank & Trust Co., 370 Pa. 501, 88 A.2d 773 (1952). "Comfort", as considered in Zumbro v. Zumbro, 69 Pa.Super. 600, 603 (1918) embraces "a variety of things. It is not limited solely to the necessaries of life, but may include things which bring ease, contentment or enjoyment." It is something more than support, a "minimum endurable standard of living." Price v. Rothensies, 67 F.Supp. 591, 595 (E.D.Pa.1946). "`[S]upport' is defined by Worcester as `sustenance; maintenance; subsistence; sustentation; livelihood; living.' * * * `[B]enefit' is a much broader word than `support,' and has no such limited meaning as the latter word. It is thus defined in Worcester: `Advantage; gain; profit;' and its manifest signification is anything that works to the advantage or gain of the recipient." Winthrop Company v. Clinton, 196 Pa. 472, 477, 46 A. 435, 437 (1900). See Helvering v. Evans, 126 F.2d 270 (3 Cir. 1942). In the context of the present grant, we agree with Judge Freedman who held below 215 F.Supp. at p. 517 that —
 
 
 23
 "The will emphatically reveals that the sisters are intended to be the main objects of the testatrix's bounty. This is heightened threefold by the identical provisions which each sister made in her will. Were we now construing this will in the lifetime of a surviving sister it is difficult to believe that a Pennsylvania court would place any grudging limitation on the breadth of the power to consume. The power conferred on the decedent to invade principal for her `benefit or comfort' must therefore be given its broadest meaning. It is not a power limited to her support, but on the contrary, is to be used for her benefit or comfort." Strite v. McGinnes, 215 F.Supp. 513, at p. 517 (E.D.Pa. 1963).
 
 
 24
 We think that the breadth of power given the decedent to appropriate the trust principal to herself was not clearly limited or restricted to matters relating to the decedent's health, maintenance, support or education. While it is true that the words "necessary or advisable" limit the invasion and that benefit is itself somewhat limited when contrasted with an absolute power to appropriate property to oneself, the disjunctive character of the grant indicates that the decedent could invade the principal for her "benefit" whether or not it related to the matters specified in the statute. As we interpret the statute, "comfort" is a closer case but because she could have invaded the principal for her "benefit", we need not decide whether "comfort" is sufficient limitation on the breadth of a grant of power of appointment, so as to fall within the exception of § 2041 (b) (1) (A).
 
 
 25
 The taxpayer, however, relies heavily on In Re Watson's Estate, 241 Pa. 271, 88 A. 433 (1913), in which the residue of Watson's estate was left for his wife's sole use, benefit, and support during her natural life, remainder to heirs of his deceased brothers and sisters. The court there held that the wife could not invade for the use of her relatives, that the intention of the testator, as in Tyson's Estate, 191 Pa. 218, 43 A. 131 (1899), was to give the wife only so much, that she was not to use it to other purposes than her own support. The court said that beneficiary-wife had to show good faith, that she was a quasi-trustee for the remaindermen and could not destroy their interest. The court did not determine the bounds of her power, only that under the trust she could not invade the trust principal and give it to others. The sense of the decision is not as the taxpayer contends that "use, benefit and support" equals support.
 
 
 26
 Nor is the fact that holders of Powers of Appointment are limited by the standard of good faith in Pennsylvania sufficient to constitute an ascertainable standard. The search of § 2041 is the breadth of power given a decedent. When that is determined, the tax consequence follows. Good faith exercise of a power is not determinative of its breadth.
 
 
 27
 Finally the taxpayer contends that Lillian Cree did not have a general Power of Appointment over the corpora of her sisters' trusts because she held that power as trustee. We believe, under the facts here, that it is the possession of the power of appointment over property that governs the tax consequences. Hurd v. Commissioner, 160 F.2d 610, 613 (1 Cir. 1947). Welch v. Terhune, 126 F.2d 695 (1 Cir. 1942). That Lillian Cree was sole trustee under Katherine's will, and co-trustee with the Commonwealth Trust Company (a non-adverse trustee) under Mary's will, does not affect the taxability of whatever power she had to appropriate property to herself.
 
 
 28
 The judgment of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 The section of the will in question is as follows:
 "It is my desire that my sisters enjoy the benefit of my property to as full an extent as they may require. If, therefore, in the sole judgment of the trustees hereinafter named, it is at any time necessary or advisable in order to provide for the reasonable needs and proper expenses or the benefit or comfort of my sisters or the survivor of them, I authorize, empower, and direct them to sell any or all of the said residue of my property as they may think proper and pay over to my sisters, or to my surviving sister, the proceeds or any part thereof as if it were income."
 
 
 [2]
 Katherine had been co-trustee with Lillian, under the trust established by Mary. Mary's will, as did all their wills, provided for the discretionary appointment of the Commonwealth Trust Company by the surviving sister
 
 
 [3]
 Section 2055 provides: "* * * [T]he value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * * to [certain public or charitable uses]". 26 U.S.C. § 2055 (1958)
 
 
 [4]
 Only a few reported cases have dealt with § 2041 (b) (1) (A). Phinney v. Kay, 275 F.2d 776 (5 Cir. 1960); Barritt v. Tomlinson, 129 F.Supp. 642 (S.D.Fla.1955); Snyder v. United States, 203 F.Supp. 195 (W.D.Ky.1962); Pittsfield National Bank v. United States, 181 F.Supp. 851 (D. Mass.1960)
 
 
 [5]
 On July 14, 1954, the Internal Revenue Service promulgated regulations implementing the 1939 Code, as amended by the Power of Appointment Act. In part they provided: "whether a power is limited by an ascertainable standard will be determined by applying the principles followed in ascertaining the extent to which, if any, a bequest to a trust for both private and charitable purposes is allowable as a deduction under — 812(d) (now 2055). A power to consume, invade or appropriate property for comfort, pleasure, desire or happiness, is not a power limited by an ascertainable standard." Reg. 81.24 in force January 1, 1955 under 1939 Code. See 19 F.R. 4302, 4303, July 14, 1954. Thus these regulations were promulgated less than 5 weeks before the 1954 Code became law on August 16, 1954 (although a notice of proposed rule making was published on August 5, 1953. See 18 F.R. 4599). At least from January 1, 1959, the Internal Revenue Service in their promulgated regulations omitted this reference to § 2055 and its predecessor. But the substance of § 2055 remained in the regulation. "A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education or support (or any combination of them)." The examples of what the Service believes are and are not ascertainable standards, as described in the regulations, seem to have been derived from judicial decisions in § 2055 cases. See Henslee v. Union Planters, 335 U.S. 595, 598, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 261, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Newton Trust Co. v. Commissioner, 160 F.2d 175 (1 Cir. 1947). The latter case is very reminiscent of regulations respecting § 2041. See Regulations 20.2041-1 (1959-1963)
 The impression persists that the Internal Revenue Service regarded the standard of § 2055, well settled by 1954, coextensive with the ascertainable standard of § 2041.
 
 
 [6]
 Further it would seem that since § 2041 and § 2055 will be applied to the same trust agreement they should be harmonious. Section 2055 deals with the taxation of the estate of the settler of the trust. Section 2041 taxes the estate of him who was given the power to invade. It would seem incongruous that one year would find a certain portion of the settler's trust deductible because destined for a charitable purpose, and another year find that same property swept into the estate of the holder of a power whenhis estate is taxed under § 2041.
 
 
 [7]
 This would not bring incongruous application of § 2055 and § 2041 to a given trust disposition. (See footnote 6.) If the property subject to the power was measurable under § 2055, and the power to invade related to specified matters of § 2041, there would be harmonious application
 However, a gap in the statute apparently remains where one has a limited power to appropriate to himself in matters other than his own health, education, maintenance and support, but where the property subject to the power is measurable for purposes of § 2055.
 
 
 [8]
 It is to be noted that the conditions for the exercise of the power are in the disjunctive, i. e., "necessaryor advisable * * * reasonable needs and proper expenses or the benefit or comfort * * *," so that if it was advisable to provide for the comfort of the sisters, an invasion of the corpus was permissible under the grant. (Emphasis supplied.)