**ESTATE of William ZENTMAYER, Deceased, the First Pennsylvania Banking and Trust Company, Executor, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 14650.

United States Court of Appeals Third Circuit.

Argued Feb. 19, 1964.

Decided Sept. 9, 1964.

Rehearing Denied Oct. 2, 1964.

Ernest L. Nagy, Drinker, Biddle & Reath, Philadelphia, Pa., for petitioner.

Loring W. Post, Atty., Dept. of Justice, Tax Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A.

Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before KALODNER and HASTIE, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge.

This is a petition to review a decision of the Tax Court affirming the Commissioner's disallowance of a deduction of the value of a charitable remainder from the gross estate of Dr. William Zentmayer, a physician who had attained eminence in the field of ophthalmology.

■■ Allowance of a deduction of a charitable remainder in cases where the will allows the principal of the estate to be invaded depends upon there being in the will an ascertainable standard by which the amount that the charity will receive at the termination of the life interest can be calculated with reasonable accuracy. Every since Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647, it is settled that, if the will provides that the corpus can be invaded only to the extent necessary to maintain the life beneficiary in his or her accustomed manner of living, such a standard is provided and the charitable bequest can be deducted. On the other hand, it almost goes without saying that if the trust corpus or some unascertainable part of it can be diverted from the charity, what the charity will receive cannot be valued and there can be no deduction in respect of it. This case turns entirely upon whether it was this testator's intention to restrict the power of invasion to providing money needed to maintain his sister in her accustomed manner of living.

The FOURTH paragraph of Dr. Zentmayer's will bequeaths the residuary estate to trustees to pay the net income to his sister for her life.

The FIFTH paragraph gives to the trustees certain powers to invade the principal. The paragraph is as follows:

"It is my desire and my intent that any and all parts of my estate, as well principal as income, shall be available for the support, maintenance, welfare and comfort of my said sister, so that such principal and income may be applied thereto if occasion arises as herein set forth. In order that my said desire and intent may be carried out, I specially order and direct that for the purpose of the support, the maintenance, the welfare and comfort of my said sister, and for any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister, my said trustees shall have full power and right to spend and pay out of my said estate such part and parts of the principal of said trust as my trustees shall at any time deem expedient, necessary or desirable, if the income shall be deemed by them insufficient for such purposes. My trustees shall have absolute discretion in this respect and the exercise by them of such discretion shall be conclusive upon, and without right of question or objection by, any and all parties interested or to become interested in my estate. The production by my said trustees, and any successors, of receipts or vouchers for such expenditures and payments shall be a full discharge to the extent thereof, and their action in so expending and paying shall be without liability on the part of said trustees, for waste or otherwise."

Upon the death of the life beneficiary, the bulk of the residuary estate goes in varying proportions to eleven charities most of which were devoted to the care of the eye or the study of ophthalmology.

Dr. Zentmayer died March 18, 1958, at the age of 93, leaving a residuary estate of approximately $478,000. He had made his will seven years earlier, at a time when his sister was 80 years old. Testimony was offered of the circumstances surrounding the testator and his sister at the time the will was made, but the evidence need not be reviewed in detail because, at best, it establishes the fact,

stipulated in the Tax Court, namely, that "the possibility of invasion of principal is negligible if the Court determines that the terms of the will set forth a definite and ascertainably fixed standard based upon Mary Zentmayer's past mode of living."

Briefly, the evidence shows that the testator and his sister, neither of whom had ever married led, as stated by the Tax Court, "a quiet, reserved and modest life," living in the same house (valued at $26,000) for 26 years preceding the testator's death, that the sister had some money of her own, and that there was nothing about her habits and manner of living which indicated any likelihood of her changing her way of life to a more extravagant one. However, the question is not the probability that the power to invade principal beyond the amount necessary to maintain her standard of living will be exercised but whether such power exists—not what the trustees were likely to do, but what they had the power to do.

In Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259, the Court, dealing with a somewhat similar case in which the life beneficiary was the testator's mother, 85 years old, who had been living on less than one-half the amount of the income from the trust estate, had independent investments worth $100,000, and was a woman of modest needs and without dependents, said, "We do not overlook the unlikelihood that a woman of the mother's age and circumstances would abandon her customary frugality and squander her son's wealth. But, though there may have been little chance of that extravagance which would waste a part or consume the whole of the charitable interest, that chance remained. What common experience might regard as remote in the generality of cases may nonetheless be beyond the realm of precise prediction in the single instance," and the deduction was disallowed. See also Merchants Nat. Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L. Ed. 35.

Turning now to the will, the first sentence of the FIFTH paragraph, standing alone, might be interpreted to have the effect of restricting the extent to which the trustees were authorized to invade principal to the maintenance of the testator's sister in her usual manner of life, although the use of the word "comfort" in the list of allowable invasions makes this somewhat doubtful. See Strite v. McGinnes, 3 Cir., 330 F.2d 234; Price v. Rothensies, D.C., 67 F.Supp. 591. However, the testator did not stop with the first sentence.

In the second sentence he repeated the provision which gave his trustees power to invade principal for the "support, maintenance, welfare and comfort" of his sister (using exactly the same words as he had used in the first sentence), and added "and for any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister." The otherwise needless repetition of the catalogue of purposes for which the principal might be invaded can be accounted for as having been inserted in order to show that the "any other purpose" clause was not intended to be taken as a mere recapitulation but would be recognized as adding a broader, but discretionary, power of invasion to that already mentioned.

The two provisions are not in conflict. The first sentence impliedly but unmistakably imposes upon the trustees a positive duty to invade principal "if occasion arises"—that is, if it should prove to be necessary in order to maintain the testator's sister in her usual manner of living—but for no other purpose and then only to the extent needed to make up the deficit. On the other hand, by the "any other purpose" clause the trustees may, in their absolute discretion and without any obligation to do so, draw upon the principal as they see fit, provided only that the expenditure is for the "benefit or use" of the testator's sister. In other words, the trustees *must* invade principal to the extent necessary to keep the testator's sister maintained in the manner in which she has been accus-

tomed to live, and they *may* take from the principal additional funds if, in their judgment, the expenditures would be for her benefit or use. Thus, the FIFTH paragraph provides a perfectly consistent and reasonable scheme for the use of principal as well as income in connection with the management of the life beneficiary's interest in his estate.

The petitioner's argument stresses what seemed to it to be evidence of solicitude for the charities on the part of the testator as indicating an intention that their bequests should not be diminished by the gift to his sister.[a] We cannot agree that there is anything to show a paramount interest in the charities. On the contrary, what the will shows is that the testator not only intended that his sister should want for nothing in the way of the usual necessities and amenities of a quiet and simple mode of living but that, subject to the discretion of the trustees, she should be able to satisfy any reasonable desire, the judgment of the trustees being relied upon to protect her and the estate against unreasonable, needless, or improvident expenditure.

As noted above, the only limitation that the will puts upon the "other" purposes for which principal can be spent is that they are to be such as the trustees deem to be for the "benefit or use" of the testator's sister, and, in view of the definition of "benefit" which this Court very recently [b] quoted with approval from the opinion of the Supreme Court of Pennsylvania in Winthrop Company v. Clinton, 196 Pa. 472, 477, 46 A. 435, 437,—a definition which included the statement that "its manifest signification is anything that works to the advantage or gain of the recipient"—it would seem that we would not be justified in now limiting its

meaning to support and maintenance only.

The testator was undoubtedly aware [c] that the income from his $478,000 estate would almost certainly never prove insufficient for her maintenance if so limited. One would be hard put to it to find any good reason for the power given to the trustees to invade principal to an unlimited amount, unless it was that the testator intended that the principal might be used for anything within reason that his sister might need or desire.

The will providing no ascertainable standard by which the amount that the charities will receive can be calculated with reasonable certainty, the action of the Commissioner in disallowing the deduction was correct and the decision of the Tax Court will be affirmed.

KALODNER, Circuit Judge (dissenting).

I agree with the majority's statement that "This case turns entirely upon whether it was this testator's *intention* to restrict the power of invasion to providing money needed to maintain his sister in her accustomed manner of living", but disagree with its conclusion that the testator did not have such an intention.

Whether a power of invasion will disqualify the remainder interest for purposes of the charitable deduction depends upon (1) the "terms of the power", and (2) "the proper construction to be placed thereon by the law of the state which would have jurisdiction to construe the will or trust in question".[1]

As the Tax Court declared,[2] had the power of invasion been limited to "the support, maintenance, welfare and comfort of Mary, my said sister", it would

---

a. The argument is based on nothing more than the fact that most of the charities were such as an eminent physician whose life work was in the field of ophthalmology would naturally be interested in.

b. Strite v. McGinnes, supra.

c. As the testators in Henslee v. Union Planters Bank, supra, and Merchants

Bank v. Commissioner, supra, no doubt were.

1. Newton Trust Co. v. Commissioner, 160 F.2d 175, 179 (1 Cir. 1947); accord Strite v. McGinnes, 330 F.2d 234 (3 Cir. 1964).

2. 22 CCH Tax Mem. 968.

have pertained to her prior mode of living and thereby conformed with the ascertainable standard requirement. Estate of Wood v. Commissioner, 39 T.C. 919 (1963). We may also assume, without deciding, that had the power been solely limited to "any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister," the charitable remainder would not have been deductible.

However, in the instant case, these two provisions, which standing alone would compel opposite results, appear in one sentence—the second sentence of the Fifth Clause of the will—and that makes it imperative to consider the impact of the preceding sentence of the Clause which declares the "desire and intent" of the testator on the score of invasion of principal in the following terms:—

> "It is my desire and intent that any and all parts of my estate, as well principal as income, shall be available for the support, maintenance, welfare and comfort of my said sister, so that such principal and income may be applied thereto if occasion arises as herein set forth."

In the instant case we must look to the law of Pennsylvania and apply the principles of construction which there prevail.

The applicable Pennsylvania rule was recently stated by Mr. Chief Justice Bell in Burleigh Estate, 405 Pa. 373, at page 376, 175 A.2d 838, at page 839 (1961):

> "It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made

his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: * * *."

In Wright's Estate, 380 Pa. 106, at page 108, 110 A.2d 198 at page 199 (1955) it was said:

> "In order to assist us in discovering the testator's intention, as expressed in the four corners of his will, we may place ourselves in the testator's armchair and consider the circumstances by which he was surrounded at the time. * * *"

The taxpayer suggests, and I agree, that "putting oneself in the position of Testator, it is inconceivable that he intended the words in his will to mean anything more than that principal could be used only to assure that his sister could continue in her prior mode of living." On the date of the execution of the will, testator was 87 years old and his sister was 80. Testator knew that his sister was a "homebody" not given to extravagances, and that she had ample funds, along with the income of the trust, to maintain her standard of living. Reading the "Fifth" clause in light of these facts it cannot reasonably be said that the testator intended to benefit his sister, beyond maintaining her accustomed mode of living, in any manner which might have dissipated funds which were to comprise the remainder interest in charity. It is apparent that the purpose of the power to invade corpus, which was available only when income was deemed "insufficient", was to protect the testator's sister from exigencies not immediately foreseeable at the time the will was executed.[3] Such a power created "no uncertainty appreciably greater than the general uncertainty that attends human affairs." This, the Supreme Court has said, is permissible. Ithaca Trust

---

3. Cf. Lincoln Rochester Trust Co. v. McGowan, 217 F.2d 287 (2d Cir. 1954), where the testator provided for certain unusual circumstances, spelling out the emergencies which he had in mind. The court allowed the charitable deduction.

Company v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929).

The view expressed, as to the purpose of the power of invasion and its scope, is in fact supported by the majority's conclusion that the testator "intended that his sister should want for nothing *in the way of the usual necessities and amenities of a quiet and simple mode of living*," and that "subject to the discretion of the trustees, she would be able to satisfy any *reasonable desire*, the judgment of the trustees being relied upon *to protect her and the estate against unreasonable, needless or improvident expenditures*". (Emphasis supplied).

Where safeguards are established in a will designed "to protect * * * the estate against unreasonable, needless or improvident expenditures" in executing the testator's intent to permit invasion of capital to provide that a life tenant "should want for nothing in the way of the usual necessities and amenities of a quiet and simple mode of living" it cannot be said that there is lacking an ascertainable standard by which can be calculated with reasonable certainty the amount remainder charities will receive.

The two cases cited and relied upon by the majority in support of its holding are significantly inapposite on their facts. Thus, in Henslee v. Union Planters Bank and Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949), which the majority cited as "dealing with a somewhat similar case", the testator's mother was to receive a set monthly allowance plus "any portion of my estate, either in income or principal, for [her] *pleasure, comfort and welfare*", and the will further provided that the *"first object to be accomplished* in the administration and management of my estate and this trust is to take care of and provide for my mother in such manner *as she may desire* and my executors and trustees are fully authorized and likewise directed to manage my estate *primarily for this purpose."* (Emphasis supplied). Again,

in Merchants National Bank of Boston v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943), the trustee was invested with the power to invade corpus for the "comfort, support, maintenance, *and/or happiness* of my said wife," and was specifically instructed to "exercise its discretion *with liberality to my said wife, and consider her welfare, comfort and happiness* prior to claims of residuary beneficiaries under the trust." (Emphasis supplied).

In both of these cases the testator made it clear that his intention was to benefit the life beneficiary, in all respects without limitation, prior to the charitable remainder. These factors sufficiently distinguish these cases from the instant case.[4]

There remains only this to be said.

The majority, after stating that "The testator was undoubtedly aware that the income from his $478,000 estate would almost certainly never prove insufficient for her maintenance if so limited", said "One would be hard put to it to find any good reason for the power given to the trustees to invade principal to an unlimited amount, unless it was that the testator intended that the principal might be used for anything *within reason* that his sister might need or desire". (Emphasis supplied).

The majority's reference was to the phrase in the Fifth Clause "and any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my sister". Read in the context of the entire will and the circumstances surrounding its execution, i. e., the life-long standard of modest living of the sister; the fact that she was 80 years old when the will was executed; she "had money of her own", and "the testator was undoubtedly aware that the income from his $478,000 would almost certainly never prove insufficient for her maintenance", it can only be said that the scrivener of the will, in the

---

4. A similar view of these cases was expressed in United States v. Powell, 307 F.2d 821 (10 Cir. 1962).

**494**

·mooted phrase, merely "painted the lily" of the testamentary design.

I would reverse the Tax Court for the reason that the remainder interest in charity created by the will was so declared as to allow his estate a charitable deduction.